THRIFT SHOP, INC., a corporation, d/b/a
Mode O'Day, Francis X. Moesch and
Hazel C. Moesch, Appellants,

v.

ALASKA MUTUAL SAVINGS BANK,
a banking corporation, Appellee.

No. 509.

Supreme Court of Alaska.

Jan. 29, 1965.

Francis J. Nosek, Jr., and Neil S. Mackay, Anchorage, for appellants.

Richard O. Gantz and Robert C. Erwin, Hughes, Thorsness & Lowe, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

This is a dispute over the right to possession of some business property in downtown Anchorage. Appellants claimed that appellee had agreed to lease the property to them, and then had defaulted and leased it to a third party. Without appellee's knowledge or consent, appellants took possession of the premises which they were seeking to lease by entering the building where those premises are located during the early morning hours of April 18, 1964. Appellee requested appellants to leave and, when they refused, brought this forcible entry and detainer action to regain possession. The superior court held in favor of appellee and appellants have appealed.

■ The trial court's basic holding was that appellants had no oral or written lease, no claim or color of title, and no right to possession to the premises in dispute. The principal question on this appeal is whether such holding was erroneous.

In January 1964 appellants commenced negotiations with appellee for a lease of the premises. These negotiations resulted in an understanding between the parties that appellants would lease approximately 1200 square feet of floor space from appellee. It was contemplated by both parties that they would execute a written lease. Appellee's president, R. L. Rettig, testified that on March 17 or 18, 1964 the appellants picked up a draft of a lease which he had had prepared and was offering to appellants. Rettig had prepared the lease for execution not only by the appellant corporation, Thrift Shop, Inc., but also by the corporation's officers, Francis and Hazel Moesch, in their

individual capacities. Rettig testified that on or about March 25 he telephoned Francis Moesch to see about getting the lease signed. Moesch told Rettig that he and his wife objected to signing the lease as individuals. Rettig said he heard nothing further from appellants until after the disastrous March 27th earthquake. On or about March 31 Francis and Hazel Moesch called on Rettig at his office. According to Rettig, they told him they were ready to go ahead with the written lease. Rettig told them that he did not know whether he could rent to them because the building had been condemned on account of the earthquake, and because Rettig had started discussions with other persons for a lease of the premises. The next day Hazel Moesch again came to Rettig's office, and at that time he told her that he would be unable to rent the property to her.

Francis Moesch testified that appellants had made an oral agreement with Rettig to lease the premises, and that they had made plans, which Rettig knew about, to make alterations in the space to be rented. Moesch also testified that in reliance on such agreement, appellants had ordered over $14,000 worth of equipment and $10,-000 worth of merchandise to be placed in the store space they were renting from appellee. Finally, Moesch testified that when he and his wife called at Rettig's office on March 31, he made a tender to Rettig of the rent and offered him the written lease which had been signed by the corporation and by Francis and Hazel Moesch as individuals. He testified that Rettig refused to accept the lease or the rent.

■ We cannot say that the trial judge erred in holding that there was no binding lease agreement between the parties. A contract to lease would not exist until the parties had manifested their mutual assent to its formation.[1] It is true that words and acts of the parties may constitute sufficient manifestations of assent to make a binding oral contract, even though the parties also

---

1. Century Ins. Agency, Inc. v. City Commerce Corp., Opinion No. 260, 396 P.2d 80, 81 (Alaska 1964).

had contemplated that their agreement would later be reduced to writing.[2] But such an oral contract would exist only if the parties had definitely agreed on the terms that they planned to incorporate into the writing, and had agreed that the final writing would contain those provisions and no others. If it is apparent that the parties intended that the determination of certain details were to be deferred until the writing was made out, or if an intention was manifested in any way that legal obligations arising between the parties should be deferred until the writing was made, then the words and acts of the parties would amount to nothing more than preliminary negotiations and agreements and would not constitute a contract.[3]

From the testimony in this case it appears clear that an oral contract to lease never came into existence. Appellee's president, R. L. Rettig, was asked: "in these conversations did—did you ever arrive finally at what terms you would rent to them for?" He replied: "Yes. We had arrived at the general formula under which the lease would be entered into." Appellant Francis Moesch was asked whether during the negotiations he and Rettig finally came to an understanding of what the terms of the lease were. His answer was: "I told Mr. Rettig to draw the lease up. * * * I told him we'd take the building. * * * I says, 'we'll take it', and he said 'Fine', and when I got the lease I says, 'Well, fine'."

This testimony in no way establishes that the parties had orally agreed upon all of the essential terms they planned to incorporate into the written lease. Rather, this testimony creates a strong inference that the parties intended that the final and full expression of their mutual assent would be deferred until the written lease had been prepared and agreed upon. There was no other testimony that detracted from the validity of such an inference. The evidence would not support a finding that the parties intended there be a binding agreement prior to the execution of the written lease.

Nor would the evidence support a finding that a contract was formulated when appellants tendered to appellee the signed lease and a check for the rent on March 31. Prior to that date, on March 17 or 18, appellee had offered to rent the premises according to the terms of a written lease which Rettig had had prepared and had presented to appellants. In order for a contract to have been formed, it was essential that acceptance of this offer be unequivocal and in exact compliance with the requirements of the offer that appellee had made.[4] That was not done here. One of the express requirements of the proposed written lease was that it be executed, not only by the corporation, Thrift Shop, Inc., but also by Francis and Hazel Moesch as individuals. Appellee was advised by the Moesches on March 25 that they objected to signing the lease individually. This action on their part amounted either to a rejection of the offer made by appellee or, if it could be said that the lease was otherwise acceptable, to a counter-offer by the appellants. In either case, whether there was an outright rejection or a counter-offer, the effect was the same—the power to accept the offer that had been made by appellee was terminated.[5] Appellants could not revive the proposal made by appellee by tendering an acceptance of it later on March 31.[6] Their action in this respect did not bring a contract into existence.

2. Restatement, Contracts § 26 (1932); In re ABC—Fed. Oil & Burner Co., 290 F.2d 886, 889 (3d Cir 1961).

3. Restatement, Contracts § 26, comment a (1932).

4. Restatement, Contracts §§ 58, 59 (1932); United States v. Braunstein, 75 F.Supp. 137, 139 (S.D.N.Y.1947) appeal dismissed, 168 F.2d 749 (2d Cir. 1948); United States v. Mitchell, 104 F.2d 343, 346 (8th Cir. 1939).

5. 1 Corbin, Contracts § 90 (1963); Beaumont v. Prieto, 249 U.S. 554, 556, 39 S. Ct. 383, 63 L.Ed. 770, 772 (1919).

6. Beaumont v. Prieto, supra note 5.

Appellants argue that since this was an action to recover possession of property under the forcible entry and detainer statute[7], the court was limited to determining whether appellants' entry of appellee's premises was forcible or whether they unlawfully held possession by force. Appellants contend that the court had no right to inquire into the existence or non-existence of an agreement to lease, and that that question would have to be litigated in a separate action of ejectment. In support of this contention appellants cite the early Alaska cases of Steil v. Dessmore [8], decided in 1907, and Miners' & Merchants' Bank v. Brice [9], decided in 1915, which held that where there is no forcible entry or forcible detainer there is no cause of action, and that the proper remedy for one who claims the right to possession of the property is in a suit for ejectment.

These cases are not controlling. The practice and procedure in our courts today is not the same as that which prevailed in 1907 and 1915. Civil Rule 2 provides that "There shall be one form of action to be known as a 'civil action.'" In Mitchell v. Land [10] we held that in this one-form-of-action procedure, the parties should be granted the relief to which they are entitled, irrespective of the theory of their pleadings, and that a court is not justified in depriving a party of his rights because he mistakes the nature of his remedy. In this case evidence was presented by both parties which showed that no contract to lease had been created, and that appellants had no right to possession of the premises which they had occupied without appellee's permission. Whether appellants had entered the premises by force or were unlawfully witholding possession by force is of no significance. The evidence showed that appellee was entitled to recover possession from the appellants. It would have been entirely contrary to the spirit and purpose of the rules of civil procedure to have forced appellee to resort to a separate action in ejectment in order to obtain the relief to which the proof showed it was entitled.

The procedure in a forcible entry and detainer action is more summary in nature than in an ordinary civil action. Under Civil Rule 85 the summons in a forcible entry and detainer action must be served not less than 2 nor more than 4 days before the day of trial, and no continuance may be granted for a longer period than 2 days "unless the defendant applying therefor shall give an undertaking to the adverse party, with sureties approved by the court, conditioned to the payment of the rent that may accrue if judgment is rendered against defendant." It is true that if this action had been simply one to recover possession of property without reference to the forcible entry and detainer statute, Civil Rule 85 would not have been applicable. But appellants have not established that they were harmed by application of that rule. The only continuance they asked for was granted, and when the question of the existence of a contract to lease was being inquired into at the trial, appellants did not contend that they had been prejudiced by being summarily brought to trial.

Nor have appellants shown any prejudice arising from the fact that appellee's complaint was limited to claiming relief under the forcible entry and detainer statute, whereas the scope of inquiry at the trial was extended beyond the narrow issues of whether appellants had used force in securing or retaining possession of the premises. Appellants not only did not object to testimony concerning the existence or non-existence of a lease, but offered testimony themselves on this point. They did not claim that this matter could not be gone into because of the nature of appellee's complaint. Finally, appellants made no claim during the trial that because the ac-

---

7. AS 09.45.060–09.45.160.

8. 3 Alaska 392, 399 (D.Alaska 1907).

9. 5 Alaska 418, 420–421 (D.Alaska 1915).

10. 355 P.2d 682, 687 (Alaska 1960). See also Brayton v. City of Anchorage, 386 P.2d 832, 833 (Alaska 1963).

tion had been brought as one for forcible entry and detainer, they were prevented from introducing any evidence relevant and material to their claim that a binding contract to lease had been entered into.

The trial court was justified in holding that there was no lease agreement between the parties and that appellants had no right to possession of the premises in dispute. It is unnecessary to decide whether or not appellants' entry or detention of the premises was forcible within the meaning of the statute. The proof showed that appellants were not entitled to possession, without regard to whether the element of force was present.

▬▬▬ Appellants' final point is that the court erred in awarding damages consisting of $25 a day as reasonable rental value of the premises during the time that appellants retained possession, together with the cost of hiring guards for that time at the rate of $156 a day. Appellants argue that appellee was limited to recovering arrears of rent or damage to the premises under that portion of the forcible entry and detainer statute which provides:

"The plaintiff may unite a cause of action for arrears of rent on the property in question or for damage to the premises and all the causes are considered to arise out of the same transaction." [11]

We do not interpret this statutory provision as limiting the recoverable damages where one's real property has been withheld from his possession by another. This section of the law purports to deal only with practice and procedure, and not with the substantive law of damages. And in dealing with procedure, this section has no significance, because in providing what causes of action may be united it attempts to regulate a matter of practice and procedure covered by court rule.[12] Civil Rule 18(a) provides that a plaintiff may join in his complaint, either alternately or independently, as many claims either legal or equitable as he may have against the defendant.

By unlawfully taking possession of appellee's property, appellants committed a tort and were liable as trespassers to appellee.[13] Such liability imposed on appellants an obligation to compensate appellee for the injury done to appellee's rights. This obligation would be fulfilled by requiring appellants to pay appellee an amount of money which would place appellee in a position substantially equivalent in a pecuniary way to that which it would have occupied had the tort not been committed.[14]

By reason of appellants' unlawful invasion of appellee's rights, appellee was denied the opportunity to collect rent for the property during the time that appellants had possession. In addition, appellee was required to hire guards for the building where the premises were located, because the building could not be kept locked while appellants occupied the premises. What appellee lost in rent and what it paid out for guards is the measure of compensation that appellants are obliged to pay for their invasion of appellee's rights. The damages awarded to appellee were proper.

The judgment is affirmed.

11. AS 09.45.070(b).

12. Silverton v. Marler, Opinion No. 186, 389 P.2d 3, 5–6 (Alaska 1964).

13. Restatement, Torts § 158 (1934).

14. Restatement, Torts §§ 901, 902, 903, comment a (1939).