Arthur J. SCHAIBLE et al., Appellants,

v.

FAIRBANKS MEDICAL & SURGICAL CLINIC, INC., Appellee.

No. 2197.

Supreme Court of Alaska.

Feb. 18, 1975.

Stephen S. DeLisio of Merdes, Schaible, Staley & DeLisio, Anchorage, for appellants.

Andrew J. Kleinfeld, Fairbanks, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

RABINOWITZ, Chief Justice.

This appeal arises from the superior court's dismissal of a complaint filed under Alaska's forcible entry and detainer

statutes.[1] The legal sufficiency of the complaint was attacked on the grounds that it failed to state a claim upon which relief could be granted.[2]

In the complaint, which was filed on March 4, 1974, appellants (hereinafter referred to as Center) made among others the following allegations: On August 15, 1966, Center, a partnership of physicians, leased certain land and improvements located in Fairbanks to another partnership comprised of physicians.[3] On January 9, 1969, the lessee-partnership assigned its interest in the lease to appellee (hereinafter referred to as Clinic). Subsequently, Clinic "expressed the desire" that Center expand and remodel the clinic building in order to enable Clinic to substantially expand its business. In furtherance of this desire, Clinic sent Center a letter dated September 8, 1972, bearing the caption "Letter of Intent, September 5, 1972". In this letter, which was signed by Clinic's vice president and by Clinic's secretary, Clinic agreed to lease from Center "all of the space to be constructed on the first floor of the existing . . . Center Building consisting of approximately 7,400 square feet . . . ." The letter of intent then specified certain terms and conditions including the following: the original August 15, 1966 lease on the existing building was to continue; an addendum to the 1966 lease was to be executed to provide for additional rental upon completion of the remodeling or alteration of the existing building;[4] and rent to be paid for the newly constructed space was to be at the same rate of return on invested capital as for the existing building, but not to exceed $1.25 per square foot for the first year of the term, with annual increases of two percent thereafter. The letter of intent further provided that the lease term for the newly constructed space was to commence on the day following completion of construction and end on August 31, 1987. The letter concluded by stating that Clinic "has reviewed all the plans and specifications for the newly constructed space as well as those for the remodeling and/or altering of the existing building . . . [and Clinic] . . . by this letter of intent indicates its approval of these plans and specifications and instructs the . . . Center to proceed with the new construction, remodeling and/or alterations."

The complaint further alleged that in reliance upon Clinic's promise to execute an addendum to the original 1966 lease, Center arranged short-term financing, hired a contractor, and spent in excess of $800,000 to construct improvements "as ordered by 'Clinic' under said Letter of Intent." On May 1, 1972, Clinic occupied both the altered and remodeled existing space, as well as the newly constructed space. On May 8, 1973, Center "tendered" to Clinic "Addendum No. 1" to the original 1966 lease. Clinic refused to execute the addendum and thereafter has remained in possession of the entire premises, continuing to pay rent of $18,237 per month, which is the amount specified in the original 1966 lease.[5]

1. AS 09.45.060 et seq. *See also* Civ.R. 85.

2. Civil Rule 12(b) provides in part that "the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . . ."

3. The premises, known as the Fairbanks Medical Center Building, were occupied and used by the lessee-physicians ·as the site of their medical practice.

4. The letter of intent provides that the following formula will determine this additional rent:
The actual cost to the . . . Center . . . of remodeling and/or altering the existing building, including architectural fees and overhead at the rate of ten (10%) percent plus interest at eight (8%) percent per annum will be amortized over the term of the existing lease and a sum equal to the annual amount of said amortization increased at the rate of two (2%) percent per annum shall be the amount of the rental increase to be paid in twelve (12) equal monthly installments and added to the monthly rental now paid or to be paid under any renewal options.

5. On November 5, 1973, Center filed suit against Clinic for damages for breach of contract, alleging that, because of Clinic's refusal to sign the addendum, Center was unable

On November 5, 1973, Center sent Clinic written notice that Clinic was in default under the terms of the 1966 lease as revised by the terms of the letter of intent. On November 20, 1973, a similar notice of default was sent to the original lessee-partnership and each of its partners. Asserting that the defaults were not cured, on January 9, 1974, Center sent Clinic written notice to quit the premises within thirty days. Nevertheless, Clinic has continued in possession "and refuses to vacate the premises".

Center's complaint concludes by alleging that it is entitled to recover possession of the premises from Clinic and requests that the court order Clinic to restore the premises to Center.[6]

Clinic's motion to dismiss the complaint under Civil Rule 12(b)(6) was based on several grounds. First, Clinic contended that since it holds the premises under the 1966 lease and the complaint does not allege failure or refusal to pay the rent provided for in the 1966 lease, the complaint fails to state a claim under Alaska's forcible entry and detainer statutes.[7] The motion to dismiss was also predicated on the fact that because Clinic had been in "quiet possession" for more than three years, AS 09.45.150 [8] barred use of a forcible entry and detainer action as a method of eviction.[9]

The superior court concluded that Center's claim for relief was not barred by the three-year quiet possession provision of AS 09.45.150 because the "possession" that is contemplated is adverse possession, which the trial court noted was not involved in

---

to obtain long-term financing for the improvement of the project. The inability to obtain long-term financing allegedly subjected the Center and the individual partners comprising the Center to "a devastating drain on their financial resources" in order to meet the short-term financing obligations, and injured their credit standings and reputations in the financial community. This action to recover damages, Schaible v. Fairbanks Medical & Surgical Clinic, Inc., Superior Court, Fourth Judicial District, No. 73–894, is still pending.

6. In a concluding paragraph, Center alleged: "Inasmuch as a proceeding pursuant to AS 09.45.070 is limited to recovery of possession of the premises, [Center has] . . . moved to assert [its] . . . claim for damages against [Clinic] . . . arising out of [Clinic's] . . . breach of the lease in a separate action."

7. AS 09.45.070 provides in part:
When . . . an entry is made in a peaceable manner and the possession is held by force, the person entitled to the premises may maintain an action to recover the possession.
Under this statute one of the possible ways of "holding by force" is
when the tenant or person in possession of a premises fails or refuses to pay the rent due on the lease or agreement under which he holds . . . .
AS 09.45.090(1).

8. AS 09.45.150 provides in pertinent part:
Three years' quiet possession of the premises immmediately preceding the commencement

of the action by the party in possession or those under whom he holds may be pleaded in bar thereof unless the estate of the party in the premises is ended.

9. Clinic did not assert that it could not be evicted under proper circumstances, but only that the summary procedures pertaining to forcible entry and detainer could not be used and that Center was relegated to an action for ejectment. Alaska's ejectment statute, AS 09.45.630, provides in part that: "A person who has a legal estate in real property and has a present right to the possession of the property may bring an action to recover the possession of the property with damages for withholding it. . . . ."
An alternative and subsidiary contention made by Clinic in its memorandum in support of the motion to dismiss was that the summary eviction procedure of forcible entry and detainer is an inappropriate procedure for adjudicating the complex factual and legal issues in a case involving Clinic's failure to sign a new lease as allegedly promised in the letter of intent.
In this regard, AS 09.45.120 provides:
Summons in actions for forcible entry and detainer shall be served not less than two nor more than four days before the date of trial. No continuance shall be granted for a longer period than two days unless the defendant applying for the continuance gives an undertaking to the adverse party, with sureties approved by the court conditioned to the payment of the rent that may accrue if judgment is rendered against the defendant.

the case at bar.[10]   On the other hand, the superior court was of the view that the complaint sought to try title because "title is tried when the estate which gives rise to possession is contested." [11]   In dismissing the complaint, the superior court stated that Center's action should have been brought in ejectment so that Clinic could litigate all its defenses.[12]   This appeal followed.

We think it appropriate to begin our analysis of the issues with a discussion of what we consider to be the controlling procedural rules and precedents.   First, we note that Civil Rule 8(a) states in part:

> A pleading which sets forth a claim for relief, whether an original claim . . ., shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled.

Subsection (e)(1) of this same rule of civil procedure provides that:

> Each averment of a pleading shall be simple, concise and direct.   No technical forms of pleading or motions are required.

Subsection (f) of Civil Rule 8 states:

> All pleadings shall be so construed as to do substantial justice.[13]

It can be seen from these provisions of Civil Rule 8 that the intent is to eschew technical forms of pleading; that pleadings are to be accorded a liberal construction in order to achieve "substantial justice"; and that "most important of all, they substitute the requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief' for the familiar formula 'facts constituting a cause of action,' which typified the codes."[14]

Professors Charles Alan Wright and Arthur R. Miller point out that historically pleadings have served four major functions, namely:

> (1) giving notice of the nature of the claim or defense; (2) stating the facts each party believes to exist; (3) narrowing the issues that must be litigated; and (4) providing a means for speedy disposition of sham claims and insubstantial defenses.[15]

Alluding to the fact that the Federal Rules of Civil Procedure furnish techniques that are more efficient than pleadings for purposes of performing the last three of the four traditional pleading functions, Professors Wright and Miller conclude that:

> The only function left to be performed by the pleadings alone is that of notice.   Thus, pleadings under the rules may simply be a general summary of the party's position that is sufficient to advise the other party of the event being sued

---

10.  *See* note 8 *supra.*

11.  In part, AS 09.45.150 states that "[i]n an action to recover the possession of the land, tenement, or other real property where the entry is forcible or when the possession is unlawfully held by force, there shall be no inquiry into the merits of the title."

12.  The superior court also reasoned that forcible entry and detainer proceedings are not a proper vehicle for litigating substantial rights.  Taking judicial notice of the pending action in Schaible v. Fairbanks Medical & Surgical Clinic, Inc., Superior Court, Fourth Judicial District, No. 73-894, the court identified at least five substantial issues bearing on the legal effect of the letter of intent.  The superior court reasoned that to permit such issues to be litigated in a forcible entry and detainer action would be inappropriate and would deny the defendant due process of law, as well as the right to a jury trial in civil actions under Alaska's constitution.

13.  Except where specifically noted, all of Alaska's Rules of Civil Procedure which are referred to in this opinion parallel and are substantially similar to their counterparts contained in the Federal Rules of Civil Procedure.

14.  5 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1202, at 59 (1969).  Regarding the parallel provisions of Rules 8(a), (e), and (f) of the Federal Rules of Civil Procedure, the authors further state:
> As a practical matter these provisions have ramifications that transcend the pleading stage of federal practice.  To some degree, the functioning of all the procedures in the federal rules for broad joinder of parties and claims, discovery, free amendment, and summary judgment are inextricably intertwined with the pleading philosophy embodied in Rule 8.

15.  *Id.* § 1202, at 59–60.

upon, to provide some guidance as to what was decided for purposes of res judicata, and to indicate whether the case should be tried to the court or to a jury. No more is demanded of the pleadings than this; indeed, history shows that no more can successfully be performed by the pleadings.[16]

Like Rule 8 of the Federal Rules of Civil Procedure, Civil Rule 8 is the lynchpin of the system of pleadings and procedure provided for by Alaska's Rules of Civil Procedure. Our preference is for nontechnical pleadings which are only required to state a claim for relief with brevity and clarity. All that is required of a complaint under Civil Rule 8(a) is that the pleading disclose adequate "information from which a court could conclude . . . [that] a valid claim was alleged 'showing that the pleader is entitled to relief . . . .' "[17] Civil Rule 8(e)(1) mandates simple, concise and direct averments, and subsection 8(f) requires that a liberal construction be accorded pleadings in order to achieve substantial justice.[18]

The pleading requirements of Civil Rule 9(a) apply to most claims for relief that can be brought in the courts of Alaska. Aside from Civil Rule 9's requirements for pleading special matters, Alaska's system of pleading does not require special plead-

ing provisions for particular actions.[19] In this regard, Civil Rule 85(a), which pertains to the subject of forcible entry and detainer, provides that:

> In an action for the possession of any land, tenement or other real property brought under the forcible entry and detainer provisions of law, the practice and procedure shall be as in other civil actions, subject to the following:
>
> (1) *Description of Premises.* The premises claimed shall be described in the complaint with such certainty that the defendant will be distinctly advised of their location so that possession thereof may be delivered according to that description.
>
> (2) *Summons.* Summons shall be served not less than 2 nor more than 4 days before the day of trial.
>
> (3) *Continuances.* No continuance shall be granted for a longer period than 2 days, unless the defendant applying therefor shall give an undertaking to the adverse party, with sureties approved by the court, conditioned to the payment of the rent that may accrue if judgment is rendered against defendant.[20]

Thus, it is clear that Civil Rule 85(a) envisages that the practice and procedure in forcible entry and detainer actions shall be the same as in other civil actions with the

---

16. *Id.* § 1202, at 60–61 (footnote omitted). The "more efficient" techniques mentioned are: discovery which leads to the determination of relevant facts; discovery, pretrial conference, or "partial summary judgment" (under Rule 56(d)) for narrowing the issues; and summary judgment to dispose quickly of issues about which there is no genuine controversy.

17. Dworkin v. First Nat'l Bank of Fairbanks, 444 P.2d 777, 778 (Alaska 1968). *See generally* 2A J. Moore, Federal Practice ¶ 8.03 (2d ed. 1974). *See also* Dioguardi v. Durning, 139 F.2d 774 (2d Cir. 1944), in which Judge Clark sustained against a motion to dismiss a pro se complaint that one commentator characterized as presenting "a reasonable facsimile of incoherency." 2A J. Moore, Federal Practice ¶ 8.01 [4], at 1609 (2d ed. 1974).

18. Under Civil Rule 8(e)(2), any requirement of consistency in stating a claim for relief is

eliminated subject to the provisions of Civil Rule 11. This latter rule provides in part that every pleading of a party represented by an attorney shall be signed by the attorney of record and that "The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."

19. Rule 8(a) of the Federal Rules of Civil Procedure applies to all actions in the federal courts. Aside from Rule 9, there are no special pleading provisions in the federal rules. *See* Nagler v. Admiral Corp., 248 F.2d 319 (2d Cir. 1957).

20. Provisions parallel to Civil Rule 85(a)(2) and (3) are found in AS 09.45.120.

exception that the premises must be described with certainty in the complaint,[21] although certain differences relating to summonses and continuances are provided. The point is underscored by the simple and concise form of complaint for forcible entry and detainer [22] which this court adopted as an illustrative form for use in conjunction with Alaska's Rules of Civil Procedure.[23]

With the foregoing procedural and pleading framework in mind, we now turn to the primary question raised in this appeal, namely, whether the complaint states a claim for relief that is cognizable in a forcible entry and detainer proceeding.

The United States Supreme Court announced the standard to be used by trial courts in passing on Civil Rule 12(b)(6) motions in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). There the Supreme Court said:

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[24]

In Dworkin v. First National Bank of Fairbanks, 444 P.2d 777 (Alaska 1968), appellant appealed from the superior court's dismissal of his pro se complaint for failure to state a claim upon which relief could be granted. In rejecting appellant's appeal, we said in part that a Civil Rule 12(b)(6) motion

> tests the legal sufficiency of the complaint's allegations. Well pleaded allegations of the complaint are deemed admitted for purposes of the motion but unwarranted factual inferences and conclusions of law are not considered admitted in resolving the merits of such motions. In short, in reviewing the lower court's holding, the court will not consider matters extraneous to the complaint.[25]

Guided by these principles, we have concluded that Center's complaint should not have been dismissed for failure to state a claim for relief.[26]

---

21. The adequacy of the description of the subject premises is not an issue in the case at bar.

22. Civil Form 170 reads as follows:
Plaintiff states:
1. That he is the owner of a ———— [1] interest in and entitled to the immediate possession of the following premises: ————.[2]
2. That on ————, 19———, defendant wilfully, unlawfully, forcibly, and without authority or color of right, entered upon said premises and took possession of them.
3. That defendant continues in possession of said premises, retaining the same by force and without the consent of plaintiff.
*Wherefore*, plaintiff requests that the court order defendant to restore said premises to plaintiff, and to give judgment in favor of plaintiff for his costs and attorney fees in this action.[3]
*Dated:* ————  ————
*Notes*
1. Explain interest, e. g. 'fee simple'.
2. Describe premises with particularity.
3. The complaint may include an allegation of and prayer for damages resulting from the unlawful entry or detainer.

23. The operation of Civil Rule 96, which deemed the Civil Forms sufficient to state a claim under Alaska's Rules of Civil Procedure, was suspended by Supreme Court Order No. 171, effective December 1, 1973. The order was entered because changes in the law and court rules since 1960, when the civil forms were adopted, had rendered the forms no longer sufficient in many respects. Even though Order No. 171 was effective prior to the filing of the complaint in this case, Center's complaint is far more specific than the simple, brief statement that had been considered sufficient under Civil Rule 96.

24. 355 U.S. at 45–46, 78 S.Ct. at 102, 2 L.Ed.2d at 84 (footnote omitted).

25. 444 P.2d at 779–80 (footnote omitted). Our opinion in *Dworkin* notes that the federal counterpart to Civil Rule 8(a) has received a very liberal interpretation, citing in part, 2A J. Moore, Federal Practice ¶ 8.13, at 1696 (2d ed. 1968). *See also* Shannon v. City of Anchorage, 429 P.2d 17, 20–21 (Alaska 1967) (Rabinowitz, J., concurring).

26. In Miller v. Johnson, 370 P.2d 171, 172 (Alaska 1962), we said in part:
> The 'claim' that was stated was for breach of contract. The Millers demanded judgment for the relief to which they considered themselves entitled. That such relief may not be the kind to which they are in fact

The basic requirements for maintaining a forcible entry and detainer action are spelled out in AS 09.45.070 and AS 09.45.-090. AS 09.45.070 provides in pertinent part:

> When . . . an entry is made in a peaceable manner and the possession is held by force, the person entitled to the premises may maintain an action to recover the possession.

Possession under our statutes need not be held by actual force or threat of force for AS 09.45.090 defines several instances of "constructive force" which satisfy the holding by force requirement of AS 05.45.-070. The portions of AS 09.45.090 which have relevance to the instant litigation are subsections (1) and (2). These subsections provide that:

> The following are cases of unlawful holding by force . . . :
>
> (1) when the tenant or person in possession of a premises fails or refuses to pay the rent due on the lease or agreement under which he holds, or deliver up the possession of the premises for 10 days after demand made in writing for the possession;
>
> (2) when, after a notice to quit . . . a person continues in the possession of the premises at the expiration of the time limited in the lease or agreement under which that person holds, or contrary to a condition or covenant in the lease or agreement, or without a written lease or agreement.

■ As we pointed out previously, in its complaint Center alleged that it was the owner of certain real property and improvements thereon which were described with particularity; that the premises were originally leased in August of 1966 in order to conduct the business of a medical clinic on the premises; that after expressing a desire that Center expand and remodel the subject building, Clinic sent Center a letter of intent in which Clinic agreed to lease from Center 7,400 square feet of space to be constructed on the first floor of the building. The letter of intent further provided for continuation of the original 1966 lease on the existing building and that an addendum to the 1966 lease would be executed upon completion of the remodeling or alteration of the existing building. The letter of intent specified rent for both the newly constructed space and the remodeled or altered space, and further provided that the lease term for the newly constructed space was to commence on the day following completing of construction and end on August 31, 1987. Center's complaint further alleged that it constructed the improvements as "ordered" by Clinic in the letter of intent and that on May 1, 1972, Clinic occupied both the altered space and the newly constructed space. Additionally, Center's complaint alleged that it was bringing its claim for possession of the premises under Alaska's forcible entry and detainer statutes because since May of 1972 Clinic has refused to pay any rent over and above the $18,237 monthly rent, which amount is the rental specified in the original 1966 lease.[27]

In our view these allegations are sufficient to withstand Clinic's Civil Rule 12(b)(6) motion. Under the pleading philosophy of Alaska's Rules of Civil Procedure, and the specific rules of procedure to which we have alluded, we hold that Center's complaint states a claim for relief. Here Center's complaint accorded Clinic fair notice that Center was proceeding in forcible entry and detainer and that Clinic was forcibly detaining possession of at least the newly constructed space by virtue of its holding this space under the letter of intent and its refusal to pay any additional

---

entitled to obtain is of no significance in determining whether there has been sufficiently stated a claim upon which *some* relief may be granted.
*See also* Thrift Shop, Inc. v. Alaska Mut. Sav. Bank, 398 P.2d 657, 660 (Alaska 1965).

27. We also note that Center's complaint alleged the giving of notices of default and notice to quit.

rent for such space. The complaint discloses sufficient information to enable us to conclude that a claim for relief was stated by Center. Our dissenting colleague prematurely focuses on the merits of this litigation, which are not properly raised by a Rule 12(b)(6) motion once it is concluded that the plaintiff could prove some set of facts entitling him to relief.[28]

██ Embodied by this holding is our rejection of all other grounds advanced by Clinic in support of the trial court's dismissal of Center's complaint. Although we have carefully considered each separate ground urged by Clinic for affirmance of the superior court's decision, we deem it necessary to discuss briefly only the following grounds. First, Clinic has urged that its more than three years' quiet possession under the August 1966 lease precludes Center from resorting to Alaska's forcible entry and detainer statutes. In this connection, AS 09.45.150 provides in part that:

> Three years' quiet possession of the premises immediately preceding the commencement of the action by the party in possession or those under whom he holds may be pleaded in bar thereof unless the estate of the party in the premises is ended.

Clinic has not cited any precedent which holds that a lessee's three years' quiet possession under a lease bars a forcible entry and detainer action. The preponderance of judicial precedent, construing substantially similar statutes, appears to be in accord with the superior court's holding that "quiet possession" within the terms of AS 09.45.150 means adverse possession, not possession under a lease.[29] We find no error here. The three-year rule is designed to apply to forcible entry cases rather than forcible detainer cases. At the time forcible entry and detainer statutes were enacted, they were an adjunct to criminal trespass statutes; if a person was forced off his land by another, the dispossessed person could bring a forcible entry and detainer action to be restored to possession. We think it reasonable to construe AS 09.45.-150 as requiring one who is forcibly dispossessed to bring an ejectment action, rather than a forcible entry and detainer action, against the person in possession if that person has been in "quiet possession" for three years or more.

██ Clinic also argues that Center's complaint is subject to dismissal because it attempts to litigate a question of title and is thus prohibited by AS 09.45.150. This statute provides in part:

> In an action to recover the possession of the land, tenement, or other real property where the entry is forcible or when the possession is unlawfully held by force, there shall be no inquiry into the merits of the title.[30]

28. Under the *Conley* standard, Clinic was required to show that Center could prove "no set of facts . . . which would entitle [it] to relief." 355 U.S. at 45–46, 78 S.Ct. at 102, 2 L.Ed.2d at 84. Although Center may not be entitled to possession of the entire premises, as was sought by the complaint, under Civil Rule 54(c) a prevailing party should be awarded the relief to which he is entitled, even if the party has not demanded such relief in his pleadings. *See, e. g.*, Alaska Placer Co. v. Lee, 502 P.2d 128, 132 (Alaska 1972); Miller v. Johnson, 370 P.2d 171, 172 (Alaska 1962). Even assuming that the letter was not effective as a lease, under the facts alleged Clinic could be deemed a tenant at will of the newly constructed space and hence subject to eviction from that portion of the premises. Center could, at the least, be entitled to possession of the newly constructed prem-

ises, which were not the subject of the 1966 lease.

29. *See, e. g.*, Kedrovsky v. Rojdesvensky, 123 Misc. 159, 204 N.Y.S. 442 (Sup.Ct.App. Term 1924); Daily v. Rucker, 151 Va. 72, 144 S.E. 466 (1928); *cf.* Weed v. Niles Homes, Inc., 47 Misc.2d 485, 262 N.Y.S.2d 904 (Dist.Ct. Nassau Co. 1965). *Compare* Hickman v. Ryan, 4 Terry 431, 48 A.2d 517 (Del.Super.1946), a case not involving a lease, in which the court, in broad dicta, construed a unique Delaware statute which read that no writ of forcible entry and detainer could issue "after the tenant has been in continued possession of the premises for two years."

30. The superior court accepted Clinic's argument and held that, because Center's complaint involved an inquiry into the merits

The conventional definition of title, meaning ownership of the premises, is reflected in Sunray DX Oil Company v. Lewis, 426 S.W.2d 44 (Mo.1968). In *Sunray,* the court held that a controversy concerning a leasehold estate, regardless of its duration, does not involve title to real estate. Thus, we conclude that title under AS 09.45.150 means ownership of the property, and therefore the allegations of Center's complaint did not attempt to litigate the merits of the title.[31]

■ . Further, we note that in dismissing Center's complaint, the superior court was of the opinion that forcible entry and detainer actions could not be used as a vehicle to litigate substantial rights or issues. In reaching this conclusion, the superior court relied on Steil v. Dessmore, 3 Alaska 392 (D.Alaska 1907). In our view, this was an erroneous reading of the *Steil* decision for nowhere does *Steil* explicitly mention that substantial rights or issues cannot be litigated in a forcible entry and detainer action.[32]

Finally, mention should be made of Clinic's assertion that the summary procedures provided for by Alaska's forcible entry and detainer laws deny due process of law to tenants.[33] We find this appeal does not present an appropriate occasion to rule upon this significant contention. We decline to do so because Clinic, in light of the length of time which has elapsed since Center's complaint was filed, cannot demonstrate any prejudice to it flowing from the summary procedures in question. We do note, however, that in Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), the Supreme Court of the United States held that the early trial provisions of the Oregon forcible entry and detainer statute, which is nearly identical to Alaska's, did not deny residential tenants due process of law or equal protection of the law under the Fourteenth Amendment to the United States Constitution. On the other hand, we recognize that forcible entry and detainer statutes often operate unfairly.[34]

of title, an action in ejectment was the only appropriate avenue for Center to follow. In Modrock v. Marshall, 523 P.2d 172, 174 (Alaska 1974), we said:

> It is well-settled that where title to the property is in dispute, dispossession by [forcible entry and detainer] may not be ordered. Instead, the plaintiff must establish his paramount title in an action for ejectment.

31. Clinic's attempt to characterize its leasehold as an interest in the "title" to the premises seems designed to force Center, the landlord, to bring an ejectment action to evict Clinic, a tenant under a written lease. After Center's complaint had been filed, the Legislature, in adopting the Uniform Residential Landlord and Tenant Act, added the following proviso to the ejectment statute:

> [H]owever, recovery of possession from a tenant shall be made under AS 09.45.060 et seq. [, the forcible entry and detainer provisions].

Ch. 10, § 3 SLA 1974. While this amendment does not control the case at bar, the proviso reflects a legislative mandate for using the forcible entry and detainer procedure to evict tenants.

32. On appeal, Clinic does not controvert Center's position that substantial rights and issues can be tried in a forcible entry and detainer action. *See also* Thrift Shop, Inc. v. Alaska Mut. Sav. Bank, 398 P.2d 657, 660 (Alaska 1965).

33. *See* Civil Rule 85(a)(2) and (3) and AS 09.45.110 and AS 09.45.120 which provide that the trial must take place within two to four days of service of process and that continuances are limited to two days, unless the tenant posts bond.

34. *See* Clocksin, Alaska's Summary Eviction Law—A Confused Anachronism, 4 UCLA–Alaska L.Rev. 56 (1974); Clough, The Case Against the Doctrine of Independent Covenants: Reform of Oregon's FED Procedure, 52 Ore.L.Rev. 39 (1972); Note, California Unlawful Detainer Procedure—A Proposed Legislative Change, 21 Hastings L. Rev. 491, 498–506 (1970). *See also* Pernell v. Southall Realty, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974), in which the Supreme Court recognized the tenant's right to a jury trial in a forcible entry and detainer action. The *Pernell* Court rejected the argument that a jury trial would create excessive delay in the summary proceedings.

We therefore conclude that the superior court's dismissal of Center's complaint should be reversed and the matter remanded for further proceedings.[35]

Reversed.[36]

CONNOR, Justice (dissenting).

I must respectfully dissent.

While I agree with the majority's exposition of the principles of notice pleading, I think that the remedy of forcible entry and detainer was inappropriate and unavailable in the circumstances of this case.

There is no question that if the Clinic occupied additional and remodeled space in the Center's building it would owe additional rent in some amount greater than that provided by the 1966 lease. But it is impossible to determine, without reference to extraneous facts, what the amount of that additional rent should be. The letter of intent does not permit any precise reckoning. Even if it can be construed as a binding promise—a question as to which I take no position—it is too vague in terminology to create a liability for rent in any definite amount. The relevant provisions of the letter of intent, by which the Clinic agreed to be bound, are these:

"1. Rent to be paid for the additional newly constructed space shall be at the same rate of return on capital invested by the Medical Center Partnership as for the existing building on an absolute net basis not to exceed $1.25 per square foot for the initial year of the term.

2. The lease term shall be for the period commencing on the day following the completion of construction, and ending August 31, 1987, with options to renew and other terms to conform generally to the lease on the existing building except as hereinafter provided.

3. The lease for the newly constructed space shall provide for an annual increase in rental at the rate of two (2%) percent above the rate for the preceding year.

4. The lease on the existing building executed on August 15, 1966, will remain in effect; provided, however, that an addenum to such lease shall be executed which shall provide that when the remodeling and/or alteration of the existing building is completed the Fairbanks Medical and Surgical Clinic will pay an additional rental for the remodeled or altered existing space to be determined as follows:

The actual cost to the Fairbanks Medical Center Partnership of remodeling and/or altering the existing building, including architectural fees and overhead at the rate of ten (10%) percent plus interest at eight (8%) percent per annum will be amortized over the term of the existing lease and a sum equal to the annual amount of said amortization increased at the rate of two (2%) percent per annum shall be the amount of the rental increase to be paid in twelve (12) equal monthly installments and added to the monthly rental now paid or to be paid under any renewal options.

5. The new lease under item (2) above shall contain the same renewal options as in the existing lease with the added provision that the new lease can only be renewed and must be renewed to conform to any renewals of the existing lease.

The Fairbanks Medical and Surgical Clinic, Inc., through its agents has reviewed all the plans and specifications for the newly constructed space as well as those for the remodeling and/or alter-

---

35. We wish to express our appreciation to respective counsel for the excellence of their oral advocacy, and to give recognition to counsel for Clinic for providing an extremely informative and literate discussion of the historical origins of forcible entry and detainer statutes.

36. Upon remand the superior court should consider whether this matter should be con-

solidated with Schaible v. Fairbanks Medical & Surgical Clinic, Inc., Superior Court, Fourth Judicial District, No. 73–894, and, in light of the substantial delay encountered, whether precedence on the trial calendar should be granted.

**1262**

ing of the existing building which have been prepared as of the date of this Letter of Intent. The Fairbanks Medical and Surgical Clinic, Inc., by this Letter of Intent indicates its approval of these plans and specifications and instructs the Fairbanks Medical Center to proceed with the new construction, remodeling and/or alternations."

Apparently, no document purporting to be a new lease or modification of the 1966 lease was ever agreed to by the parties. After it occupied the newly created space, the Clinic was certainly under an equitable obligation to pay rent in some amount, as yet, however, undetermined.

Given the failure to negotiate a new lease or modification of the old lease, the Center had several courses open to it. It could bring, as it did here separately, a damage action. Considering the extreme financial distress to which the Center claims it was subjected, it could also have sought equitable relief requiring that the Clinic pay some amount as additional rent during the pendency of the ejectment action, if the Clinic were to continue to occupy the additional and remodeled space. This assumes that the Center could demonstrate irreparable injury beyond the infliction of mere money damages.

At the time the forcible entry and detainer action was brought, the Clinic still had a valid and subsisting lease. It could be terminated prematurely only by a statutory action under AS 09.45.690, which provides:

"Unless otherwise provided in the lease, a landlord has a right to re-enter leased premises when a tenant fails to pay rent, and may bring action to recover the possession of the premises and the action is equivalent to a demand of the rent. If, at any time before judgment, the lessee or his successor in interest pays the amount of rent in arrears with interest and costs of the action and performs the other covenants or agreements, he is entitled to continue in possession unless otherwise provided in the lease."

In its forcible entry and detainer complaint the Center alleged an entitlement to all of the Clinic's premises, including those which were demised by the 1966 lease. The complaint thus ignores the problem of the existing lease and its termination.

Forcible entry and a detainer is a harsh, summary procedure. It is intended to be used only in cases where the right to possession by the landlord is clear. Typically it is used to evict tenants who fail to pay rent under a lease or agreement, or whose possessory term has expired. It is utterly inappropriate in cases where a substantial dispute as to the terms of the tenancy is presented. Our statute prohibits inquiry into the merits of the title dispute. AS 09.45.150. The term "title" in this context can be considered the equivalent of the term "title or estate." Steil v. Dessmore, 3 Alaska 392 (D.Alaska1907).

In the case at bar the Clinic held an estate for years in the premises covered by the 1966 lease, the Center holding only a reversionary interest. In Alaska a lease is a conveyance of an interest in real property. Cf. Smalley v. Juneau Clinic Bldg. Corp., 493 P.2d 1296, 1299 (Alaska1972). In dealing with commercial leaseholds for a term of years, a claim that forfeiture of the estate has occurred can raise difficult questions of law or fact. To attempt to try such questions in a summary forcible entry and detainer proceeding is to do the very thing which AS 09.45.150 prohibits, i. e., inquire into the merits of title. Cases such as these cannot be tried fairly or intelligently in a summary proceeding.

I agree, therefore, with the trial judge, that to proceed upon the forcible entry and detainer complaint would have required an inquiry into title. In my opinion the complaint was properly dismissed on this basis.

The majority opinion points out that, at least as to any newly constructed space, the Clinic was holding such space without paying any additional rent. I agree with the majority that this would permit the summary eviction of the Clinic from the additional space, as to which, under the facts pleaded, it would hold as a mere tenant by sufferance. But the Center sought evic-

tion as to the entire premises. Implicit in the ruling of the trial court is the conclusion, a proper one in my opinion, that to try to segregate the obligations under the subsisting lease from those arising under the occupancy of the new space would require a determination far too complex to be fairly adjudicated in a forcible entry and detainer action. There was already on file another action in which these difficult issues could have been determined. The other civil action was the appropriate vehicle for litigating the respective rights and duties of the parties.

Another flaw in this proceeding is that the complaint does not allege any definite amount of rent owing. It merely states that the Center wants more rent than it is receiving, the amount to be determined by an ambiguous formula, based in turn on a general notion of "rate of return." Yet a tenant, under AS 09.45.690, has a right to pay rent in arrears, plus costs and interest, at any time before judgment, and may thereby avoid forfeiture of his leasehold. If a summary eviction is to be based upon non-payment of rent, a sum certain should be alleged to be due. Otherwise the tenant is deprived of his redemptive rights.

In my opinion the judgment of dismissal should be affirmed.