Chad R. LEWIS, Appellant,

v.

Jessica E. LEWIS, Appellee.

No. S–14473.

Supreme Court of Alaska.

Sept. 14, 2012.

David A. Golter, Golter & Logsdon, P.C., Palmer, for Appellant.

Notice of non-participation filed by Appellee and Kenneth J. Goldman, Law Offices of Kenneth J. Goldman, Palmer, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

When Chad and Jessica Lewis divorced, they participated in a settlement conference to divide their property. Following the settlement conference, the superior court recited a proposed settlement agreement on the record, and both parties agreed to it. Jessica then filed proposed findings of fact and conclusions of law incorporating terms which differed from the agreement as recited by the court. The superior court accepted Jessica's proposed findings and decree over Chad's objection. Chad now appeals. Because we conclude that there is no evidence that the parties agreed to the terms set out in Jessica's proposal and because the terms recited on the record are unenforceable, we vacate the superior court's written findings of fact and conclusions of law and remand for a new property division.

## II. FACTS AND PROCEEDINGS

Chad and Jessica Lewis were married in 1997 and separated in 2010. Jessica filed for divorce shortly thereafter. The parties came before the superior court for a settlement conference in July 2011. There the parties ostensibly reached an agreement as to the division of their assets and liabilities.

Following the agreement, the superior court "[took] a stab at placing [the] settlement agreement on the record." The court noted that the most significant asset, the marital residence, was then encumbered with two mortgages: a Citibank mortgage and an Alaska USA home equity line of credit (HELOC). The court stated that Chad was to have the option either to sell the property or to refinance it in an amount that would satisfy both the Citibank and HELOC loans and to buy out Jessica's share of the equity. If Chad chose to refinance, the court said, Jessica's

> share of the equity would be defined as fair market value on a re-fi[nance], which the parties stipulate as $175,000, minus the principal balance on the Citibank loan and the HELOC times 50 percent, because she is entitled to half the equity, minus one-

half the amount of the principal balance of the HELOC at the time of refinance, plus $4,000 to compensate her for mortgage payments she made post-separation. The remainder of the equity would go to Mr. Lewis and is basically the same formula in reverse: fair-market value minus the Citibank and the HELOC, plus one-half of the principal balance of the HELOC loan as of the date of refinance, minus $4,000 for the compensation for the mortgage payments that [Jessica] made post-separation.

The court then gave both parties an opportunity to object or make corrections to this formula, and neither did. The court asked Jessica's counsel to prepare factual findings and a proposed decree memorializing the agreement.

Shortly after the settlement conference, Jessica's counsel submitted proposed findings of fact and conclusions of law. The proposal described the division of the equity in the house as follows:

> Jessica Lewis' share of the equity is defined as the [ ] fair market value of the home, $175,000, (if refinanced vs. sold) minus one half (1/2) of the Citimortgage loan and one half (1/2) of the Alaska USA HELOC at the time of closing. In addition, Chad Lewis owes Jessica Lewis $4,000 to compensate Jessica Lewis for mortgage payments made post separation.
>
> Chad Lewis' share of the equity is defined as fair market value of the refinance minus one half (1/2) of the Citimortgage loan and one half (1/2) of the Alaska USA HELOC at the time of closing.

Chad filed an objection to the proposed findings and conclusions, arguing that the agreement set out by Jessica's counsel was different from the agreement memorialized at the settlement conference. Specifically, Chad argued that at the settlement conference, the parties agreed (and the trial court stated on the record) that Chad was "to receive one half of the net proceeds after payment of the loans, *plus* one half of the value of the HELOC loan from [Jessica's] share." (Emphasis in original.)

The superior court entered the findings and conclusions as proposed by Jessica. In

response to Chad's objection, the superior court noted that it "reject[ed] [Chad's] interpretation of the settlement regarding the home. The parties agreed to share *equally* in the net proceeds (defined as net after refinance *or* net after sale)." (Emphasis in original.) Chad now appeals.

## III. STANDARD OF REVIEW

■■ We analyze settlement agreements using traditional contract principles.[1] Whether a party intends to be bound by an agreement is a factual question determined by looking at "the surrounding facts and circumstances of each case, and is reviewed under the clearly erroneous standard."[2] We will find clear error only when we are "left with a definite and firm conviction that the trial court has made a mistake."[3]

## IV. DISCUSSION

Chad makes two arguments in this appeal. First, he argues that the superior court's findings of fact as to the parties' intended settlement terms were clearly erroneous insofar as they were different from the terms recited by the court and agreed to by the parties on the record. He maintains that we should therefore reverse the superior court with instructions to enter revised findings in accordance with the recited settlement terms to which the parties agreed on the record. Second and alternatively, Chad argues that there was at the very least ambiguity as to the parties' intentions and that the superior court erred in failing to hold an evidentiary

hearing to determine those intentions once it became clear that the parties disagreed as to the terms of their supposed agreement.[4]

If Chad's first argument is correct, and the parties did indeed both agree to be bound by the agreement-as-recited, then that original oral agreement controls if it is otherwise enforceable.[5] If Chad's alternative argument is correct, and the parties did not definitively agree on the intended terms, then there has been no meeting of the minds, and therefore no contract, and the settlement agreement must therefore be vacated.[6]

■■ "The formation of an express contract requires an offer encompassing its essential terms, an unequivocal acceptance of the terms by the offeree, consideration and an intent to be bound."[7] "Mutual assent is an elementary requirement for a binding contract."[8] Here the question is whether both parties intended to be bound by the same terms. According to Chad, "the parties' agreement was clearly recited on the record" by the trial court, and "[t]he parties verbally agreed to this on the record," and this oral recitation of the contract ought to control. The superior court's oral recitation stated "that the HELOC balance would be paid entirely from [Jessica's] share of the proceeds." The superior court, however, disagreed with Chad that the parties intended to take the HELOC out of Jessica's share, finding instead that the parties had intended

1. *Crane v. Crane*, 986 P.2d 881, 885 (Alaska 1999).

2. *Juliano v. Angelini*, 708 P.2d 1289, 1291 (Alaska 1985) (citing *Thrift Shop, Inc. v. Alaska Mut. Sav. Bank*, 398 P.2d 657, 658–59 (Alaska 1965)).

3. *Ford v. Ford*, 68 P.3d 1258, 1263 (Alaska 2003) (quoting *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)).

4. Jessica has not participated in this appeal.

5. *See Mullins v. Oates*, 179 P.3d 930, 939 (Alaska 2008) ("[U]nannounced additions to settlement agreements ... are void.... The settlement—as originally articulated at the settlement conference—remained in effect despite the flawed attempt to insert a new term into the final settlement documents.") (citing *Adams v. Adams*, 89

P.3d 743, 749 (Alaska 2004) and *Pierce v. Pierce*, 949 P.2d 498, 500 (Alaska 1997)); 1 JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 2.9, at 156 (1993) (noting that when parties intend a writing to merely memorialize a prior contract, "the contract is valid even though they try and fail to agree upon the form and terms of the memorial").

6. *See Young v. Hobbs*, 916 P.2d 485, 488–89 (Alaska 1996).

7. *Childs v. Kalgin Island Lodge*, 779 P.2d 310, 314 (Alaska 1989) (citing *Hall v. Add–Ventures, Ltd.*, 695 P.2d 1081, 1087 n. 9 (Alaska 1985)).

8. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1281 (Alaska 1985) (citing *State v. Fairbanks N. Star Borough Sch. Dist.*, 621 P.2d 1329, 1331 n. 3 (Alaska 1981)).

to split equally the net proceeds of refinance or sale.

■ "In determining the parties' intent, the courts look first to the parties' expressed intentions. 'If their expressions convince the court that they intended to be bound without a formal document, their contract is consummated, and the expected formal document will be nothing more than a memorial of that contract.' "[9]

In this case, the only evidence in the record of the parties' intentions is the recitation of the settlement agreement on the record by the trial court.[10] As Chad correctly points out, the terms offered by Jessica's counsel and signed by the superior court were different than those recited on the record. The superior court's bare assertion that the parties intended an agreement that was substantively different from the agreement recited on the record is unsupported by any record evidence.

■ However, contrary to Chad's argument, the agreement as recited by the superior court cannot control. Even if we were to assume that both parties definitively manifested an intent to be bound by the agreement as recited, that agreement could not control because under its terms, more than 100% of the home's equity is split between the parties. Using the parties' stipulated refinance value of $175,000, the parties' combined equity in the house is roughly $50,000.[11] Under the formula recited by the court, Jessica's share of the equity results in her receiving approximately $19,000 of that equity.[12] The formula recited by the trial court for Chad's share of the equity, described as "basically the same formula [as for Jessica's share] in reverse," yields a value of

$56,000.[13] The court, in other words, awarded the parties a combined $75,000, or 150% of the equity of the house. Because the parties obviously could not have agreed to these terms, we conclude that there is no indication in the record before us of a meeting of the minds. And as noted above, the trial court's finding as to the parties' intent is not based on any reviewable record.

## V. CONCLUSION

For the foregoing reasons, we VACATE the superior court's order and REMAND for a new property division.

9. *Juliano v. Angelini,* 708 P.2d 1289, 1291 (Alaska 1985) (quoting 1 A. Corbin, Corbin on Contracts § 30, at 98–99 (1963)).

10. We note that there are several versions of the parties' property division spreadsheet in the record. But spreadsheets that are prepared before the give and take of negotiation and after the conclusion of negotiation have, at best, very limited probative value in determining what the parties intended at the time negotiations concluded and an agreement was ostensibly reached.

11. At the time of settlement, the balances remaining on the Citibank mortgage and HELOC were $105,830.90 and $19,863.47, respectively. For the sake of ease, we round these numbers to $105,000 and $20,000.

12. ($175,000 [refinance value]–($105,000 [Citibank mortgage] + $20,000 [HELOC])) * (1/2)–1/2($20,000 [HELOC]) + $4,000 = $19,000.

13. $175,000 [refinance value]–($105,000 [Citibank mortgage] + $20,000 [HELOC]) + 1/2($20,000 [HELOC])-$4,000 = $56,000.