**Ronald F. WYATT, Petitioner,**

v.

**STATE of Alaska, Respondent.**

No. S–8252.

Supreme Court of Alaska.

May 28, 1999.

Margi A. Mock, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Petitioner.

Kenneth M. Rosenstein, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Respondent.

Before MATTHEWS, Chief Justice, EASTAUGH, and FABE, Justices.

OPINION

FABE, Justice.

## I. INTRODUCTION

A jury convicted Ronald Wyatt of murdering his wife, Diane. At trial, a women's shelter employee testified that Diane called the shelter the day before her death and stated that she wanted to divorce Ronald. Diane also told the shelter employee that if Ronald were to learn of her plan to divorce him, there would be "a possible lethal situation." The superior court admitted this statement at trial over defense counsel's objection. The court of appeals concluded that although the statement did not fall within the Alaska Evidence Rule 803(3) hearsay exception for state of mind, the error was harmless. Ronald petitioned for hearing, arguing that such a hearsay statement implicated his right to confrontation and that the error must be "harmless beyond a reasonable doubt."

We agree that if the court of appeals had been correct in its determination that the statement did not qualify for the state-of-mind exception, it should have applied the "harmless beyond a reasonable doubt" standard rather than the "harmless error" standard. But we conclude that the statement does fall within the state-of-mind exception and that the court of appeals appropriately reviewed admission of the statement under the "harmless error" standard. We therefore affirm.

## II. FACTS AND PROCEEDINGS

Ronald Wyatt and his wife Diane lived in Ketchikan in Diane's home from a previous marriage. The State presented evidence that Diane had gradually become unhappy during her marriage of seven years to Ronald. Witnesses testified that her husband made consistent efforts to intimidate and dominate Diane. For example, on vacation in Mexico in 1990, Ronald threatened that if she did not "behave," they were going to leave and that if she did not leave with him, he would destroy her home.

At trial, the State introduced two alternative theories of Ronald's motive to kill Diane. First, it contended that Ronald was a domi-

neering, controlling husband who, when he learned that Diane planned to divorce him, decided he would rather kill her than lose her. Second, the State argued that Ronald was motivated to kill Diane because he would not receive any of Diane's money if they divorced.

To bolster both theories, the State presented evidence to establish the seriousness of Diane's intent to obtain a divorce despite her concerns about Ronald's potential reaction. In a meeting with a marriage counselor in early October 1992; Diane expressed her desire for a divorce, stating that the "final straw" was when Ronald had threatened to "torch the house." On October 21 an employee of Women in Safe Homes (WISH) received a phone call from Diane, requesting information about divorce and making an appointment to discuss her situation. During this phone conversation, Diane stated that "there was a possible lethal situation when she told her husband about it." The WISH employee testified: "[A]fter she said that statement, I—I said, well, are—are you going to be safe, you know, until you come in on Friday, and she said, if she kept her mouth shut she would be." Diane had previously expressed similar concerns to her sister and daughter about Ronald's reaction to her plan to divorce him.

In support of its theory that Ronald was motivated by his fear of losing Diane's money, the State offered evidence of recent financial transactions in the Wyatt accounts. The personal representative of Diane's estate testified that around the first of October, a joint checking account for the Wyatts was first opened. Also during the month of October, about $53,000 was transferred from Diane's personal accounts in a South Dakota bank into the joint account and a personal account of Ronald Wyatt. Ronald's co-worker testified that he saw a draft of a letter authorizing such a transfer on Ronald's computer. The State presented testimony that Diane's signatures on the actual letter authorizing the transfer and the signature card opening the joint account were forgeries.

The State also presented a strong case of circumstantial evidence. On October 22 Diane disappeared. Earlier that day, Diane informed her sister during lunch that she had made an appointment at WISH for the next day to discuss the divorce. Diane left lunch to meet a co-worker, but she never arrived at that meeting. One of Ronald's co-workers testified that Ronald left work before noon on October 22 and returned about 4:00 p.m. Sometime in the afternoon, two neighbors saw the Wyatts' Isuzu Trooper speeding up the driveway to the Wyatt home. Neighbors also saw Ronald burning cardboard boxes on the beach in front of the Wyatt home in the early evening. In the basement, police investigators found cardboard boxes neatly stacked on one side and strewn in disarray on the other and discovered traces of blood. At approximately 10:30 p.m. on October 22, a security guard at the Ketchikan Pulp Mill discovered the Wyatts' Isuzu Trooper near the gate to the log sorting yard at Ward Cove. As the guard checked the vehicle registration information, a man who was muddy from the waist down, acting nervous, and breathing heavily, approached the vehicle.

Five days later, a search dog and its handler discovered Diane's body wrapped in a tarp and weighted with anchors and chains in the water near the log sorting yard in Ward Cove. Approximately one month before Diane's death, Ronald stated in a discussion of a different murder case in Ketchikan with his co-workers that if he wanted to kill his wife, he would dispose of the body by wrapping it in a tarp, tying it securely, and weighting it down so it would never be found.

At trial, the superior court admitted the testimony of the WISH employee that she had talked to Diane on the phone about divorce, and she testified that Diane had stated "there was a possible lethal situation when she told her husband about [the divorce]." Ronald objected to the admissibility of these statements as hearsay during the trial, contending that the two limited purposes for which the statement was relevant— either to prove Diane planned to get a divorce or to prove that Diane had an appointment at WISH—had already been established. Ronald also argued that admitting the statement would have extreme prejudicial impact. The superior court admitted the testimony under the state-of-mind exception

to the hearsay rule but provided a limiting instruction to the jury, telling them they could not consider the statement to prove the truth of the matter asserted. The jury convicted Ronald of all charges.

Ronald appealed. He claimed that Diane's statement that a "lethal situation" would arise when she informed Ronald of her plans to divorce him constituted inadmissible hearsay and that its admission violated his right to confrontation. The court of appeals apparently determined that the statement was hearsay testimony and did not fall within the state-of-mind exception:

> [I]t appears to us that it was improper for the court to admit the statement that "there was a possible lethal situation when she told her husband about [the divorce]." The jury might have used this statement for a forbidden hearsay purpose: to conclude that because Diane Wyatt feared possible violence from her husband when she told him of her intent to divorce him, that he had reacted violently.

But the court of appeals concluded that the trial court's error in admitting the statement was harmless and affirmed the conviction. It is somewhat unclear whether the court of appeals relied upon the state-of-mind exception in rejecting the confrontation claim.[1]

Ronald then petitioned for a hearing in this court, asserting among other claims that the court of appeals applied the wrong harmless error standard in addressing the "lethal situation" statement. We granted the petition to consider this issue.

## III. DISCUSSION

### A. Standard of Review

▮ We review a trial court's ruling on the admissibility of hearsay testimony for an abuse of discretion.[2] We reverse only if upon review of the record as a whole, we are left with a definite and firm conviction that the trial court erred in its ruling.[3]

▮ If the trial court erred in its ruling, we then determine whether the error was harmless. A non-constitutional evidentiary error is harmless if the error did not appreciably affect the jury's verdict.[4] If the trial court commits constitutional error at trial, we must determine whether the error was harmless beyond a reasonable doubt.[5] The burden of proof under the "harmless beyond a reasonable doubt" standard lies with the State.[6]

### B. Admission of the "Lethal Situation" Statement Was Harmless Error.

1. *The court of appeals's opinion does not clearly state whether the statement falls within the state-of-mind exception.*

The parties disagree on whether the "lethal situation" statement qualified as a hearsay exception. The court of appeals concluded that the trial court erred in admitting Diane's statement that she faced a potentially "lethal situation" if Ronald learned of her plan to divorce him. But it is unclear from the court of appeals's opinion whether it considered the "lethal situation" statement to fall within the state-of-mind exception to the hearsay rule. Ronald contends that the court of appeals "correctly concluded that [the 'lethal situation' statement] did not fall within the state of mind exception to the rule against hearsay." In contrast, the State argues that the court of appeals "recognized" that the WISH employee's statement fell within the hearsay exception in Alaska Evidence Rule 803(3) but concluded that the statement should not have been admitted under Alaska Evidence Rule 403 because its

---

1. The court of appeals stated: "[T]he state-of-mind exception to the hearsay rule is traditionally accepted and firmly rooted.... [A]dmission of Diane Wyatt's statements to [the WISH employee] did not violate Wyatt's rights under the confrontation clauses...."

2. *See Colt Indus. Operating Corp., Quincy Compressor Div. v. Frank W. Murphy Mfr., Inc.*, 822 P.2d 925, 932 (Alaska 1991); *Ryan v. State*, 899 P.2d 1371, 1379 (Alaska App.1995).

3. *See Colt Indus.*, 822 P.2d at 932.

4. *See Love v. State*, 457 P.2d 622, 631–32 (Alaska 1969).

5. *See Wamser v. State*, 652 P.2d 98, 103 (Alaska 1982).

6. *See id.*

potential for unfair prejudice outweighed its probative value.[7]

▪ In order to apply the proper harmless error standard to an error in admitting an out-of-court statement, a reviewing court must first clearly determine whether the statement falls within an established exception to the hearsay rule. If Diane's statement falls within the state-of-mind exception to the hearsay rule but was improperly admitted because its prejudicial effect outweighed its probative value, the court of appeals appropriately applied the harmless error standard. But if the statement was inadmissible hearsay that did not fall within any exception, the admission of the statement implicates Ronald's right of confrontation. In that case, the court of appeals should have determined whether the error in admitting the statement was harmless beyond a reasonable doubt.

Despite the State's argument that Rule 403 was the basis for the court of appeals's holding, the court of appeals apparently concluded that the statement did not fall within the state-of-mind exception. While the trial court specifically addressed Rule 403 concerns, the court of appeals never discussed Rule 403, nor did it review the trial court's balancing of the probative value of the statement and its potential unfair prejudice. Instead, the court of appeals focused on the purpose of the "lethal situation" statement, concluding that "Diane's statement about 'a possible lethal situation' was not admissible to prove that [Ronald] likely did something . . . to justify Diane's fear." It determined that while the statement was "relevant to show Diane's state of mind . . . [and] to support the state's theory of Ronald Wyatt's motive for murder," it was improper to admit the statement because "[t]he jury might have used [it] for a forbidden hearsay purpose: to conclude that because Diane Wyatt [had] feared possible violence from her husband . . . he had reacted violently." This language

suggests consideration of the scope of the state-of-mind exception, rather than analysis of whether possible prejudice outweighed probative value.

Because the court of appeals does not appear to have used Rule 403 in any part of its analysis, we agree with Ronald that the court of appeals concluded that the "lethal situation" statement did not fall within the state-of-mind exception. We therefore examine the merits of that determination.

2. *The "lethal situation" statement falls within the "state-of-mind" hearsay exception.*

▪ Alaska Evidence Rule 803(3) allows admission of "[a] statement of the declarant's then existing state of mind . . . offered to prove [her] present condition or future action." Evidence of a murder victim's fear of the accused is inadmissible "if its *only* relevance is as circumstantial evidence of the accused's conduct, that is, if its probative value depends on the impermissible inference that, because the victim feared the accused, the accused likely did something or planned to do something to justify the fear."[8] To admit such evidence, the State must establish that the evidence is "directly relevant to some genuinely disputed issue."[9]

▪ We must thus determine whether the superior court allowed the statement for a permissible purpose: to prove Diane's state of mind or plan for future action. The court of appeals recognized that the WISH employee's testimony was "relevant to show . . . that [Diane] had made up her mind to obtain a divorce from her husband and was taking steps to obtain a divorce," thus supporting the State's theory of motive for murder. But it apparently concluded that Diane's intent to divorce Ronald was not a disputed issue at trial. We disagree.

Ronald argues that Diane's fear of her husband was not relevant to any disputed

---

7. Alaska Evidence Rule 403 provides:
 Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

8. *Linton v. State*, 880 P.2d 123, 130 (Alaska App. 1994) (emphasis added), *aff'd on reh'g*, 901 P.2d 439 (Alaska App.1995).

9. *Id.*

issue at trial because everyone agreed that Diane was determined to seek a divorce from Ronald. But Ronald's closing argument belies his current assertion that he never disputed Diane's intent to divorce him and the seriousness of her purpose:

> Now we just talked about suspicion and conjecture. There is no question but that there was some discussions between Ron Wyatt and Diane Wyatt about the state of their marriage, and there['s] no question—and it's not that uncommon that they've been married for seven years or nine year[s], that there was serious problems ongoing. But no—no divorce papers, no dissolution papers. Basically,—and—and it may be—well be true that she was going to divorce him. And sure it's suspicious if someone's going to divorce someone and they get killed. But—but that's not proof.... There's some divorce talk. What marriage ... that goes on for seven to nine years doesn't have some divorce talk in it. What person that truly loves another person doesn't hope for a reconciliation.

Thus, Ronald disputed at trial that Diane seriously intended to divorce him.

To prove either of the State's theories of motive for murder—that Ronald feared losing control of Diane or Diane's money—the State also had to convince the jury of Diane's intent to divorce Ronald. As the State argues, Diane's fearfulness of Ronald's reaction served as "a tangible measure both of how serious she was about obtaining a divorce and of the likely imminence of her action." Ronald undercut Diane's seriousness of purpose by asserting that the evidence of her desire for a divorce was simply idle talk where both persons may have "hope[d] for a reconciliation." Thus, evidence of Diane's determination to divorce Ronald despite any fear of a "lethal situation" demonstrated the seriousness of her purpose and intent and was therefore probative of her state of mind and plan for future action.

Accordingly, the court of appeals should have ruled that the statement was admissible unless it was used for a forbidden purpose. The court of appeals correctly stated that the testimony was not admissible "to prove that [Ronald] likely did something or planned to do something to justify Diane's fear." But that is not the purpose for which the superior court admitted the evidence. In fact, the prosecutor never mentioned the "lethal situation" statement in his over one-and-a-half-hour closing argument. He only referred to the WISH employee's testimony as proof that Diane intended to divorce Ronald and that Ronald must have forged checks drawn on Diane's account and cashed to a joint account in the last month of her life in anticipation of the divorce:

> So the day in which she makes an appointment with WISH, the day in which she has decided ... to get out of this marriage, two weeks after telling a therapist in the presence of her husband[, "]I want out,["] ... she's going to write a check to a joint account with her and her husband?

The prosecutor then immediately moved on to another point and never again mentioned the testimony of the WISH employee.

The trial court also provided a limiting instruction to the jury on the testimony during the trial. Shortly after the prosecutor began to question the WISH employee, Ronald again objected to the testimony and asked for a cautionary instruction. The court then advised the jury:

> The testimony that's being offered in this case, Ladies and Gentlemen, has been allowed for the limited purpose relating to the possible state of mind of Diane Wyatt at the time that she made the statement to these people, if you find that she made the statement. You may not consider it in any fashion for the truth of the matter asserted. And it's being offered to show that she went to this organization to get help with respect to obtaining divorce, as I understand it, and not for any other purpose.

Thus, the State did not use this evidence to establish that Ronald was in fact planning to harm her and that he did so.[10]

---

10. *See, e.g., id.* at 131 n. 6 (noting that presenting evidence of wife's state of mind as proof of husband's state of mind in order to establish his likely conduct would be impermissible under Rule 803(3)).

Because the parties disputed the seriousness of Diane's intent to seek a divorce, the court of appeals erred in ruling that the state-of-mind exception did not cover the "lethal situation" statement.

### 3. Admission of the statement did not implicate Ronald's right to confrontation.

■ Ronald contends that the admission of the "lethal situation" statement violated his right to confrontation.[11] The admission of hearsay does not violate the Confrontation Clause as long as the evidence has "indicia of reliability."[12] A court can infer reliability where the evidence "falls within a firmly rooted hearsay exception" or where the evidence has "particularized guarantees of trustworthiness."[13] The state-of-mind exception is a firmly rooted hearsay exception.[14]

Because we conclude that the "lethal situation" statement falls within the state-of-mind exception and because the state-of-mind exception is a firmly rooted hearsay exception, we find that the "lethal situation" statement has sufficient indicia of reliability. Even if the trial court failed to exclude the evidence properly under Rule 403, this error does not constitute a Confrontation Clause violation.[15] Thus, the court of appeals's ruling that admission of the statement did not violate Ronald's right to confrontation was correct.

### 4. The court of appeals applied the correct harmless error standard.

■ Ronald argues that the court of appeals applied the wrong harmless error standard. If Diane's statement did not fall within a recognized hearsay exception, as the court of appeals appears to have held, its admission violated Ronald's right of confrontation. As Ronald argues, the court of appeals should have then applied the "harmless beyond a reasonable doubt" standard.[16] But we conclude that Diane's statement properly falls within the state-of-mind exception. Thus, although the court of appeals used only the lesser harmless error standard, its choice did not prejudice Wyatt because that standard would have been the correct one if the court had properly evaluated Diane's statement under the state-of-mind exception.

If the superior court correctly found that the statement was an exception to the hearsay rule but erred in its evaluation of the defendant's concerns of prejudice, the court of appeals need only have applied the "harmless error" standard. A non-constitutional error is harmless if it did not "appreciably affect the jury's verdict."[17] We have previously held that this standard is proper even

**11.** The State argues that Ronald forfeited his right to confront Diane about her "lethal situation" statement by killing her. Several federal courts of appeals and state courts have held that defendants may waive their Confrontation Clause rights by their own wrongful conduct in preventing a witness from testifying at trial. *See, e.g., United States v. Smith,* 792 F.2d 441, 442 (4th Cir.1986) (admitting witness's prior statement to police in arson prosecution where defendant waived confrontation claim by procuring absence of witness); *United States v. Mastrangelo,* 693 F.2d 269, 272–73 (2d Cir.1982) (admitting grand jury testimony in drug prosecution if court found on remand that the defendant killed the witness); *State v. Corrigan,* 10 Kan.App.2d 55, 691 P.2d 1311, 1314–15 (1984) (admitting witness's prior testimony in arson prosecution because defendant ensured his wife would not testify). But this waiver rule is inapplicable to the case before us. The cases espousing this rule all involve a defendant who has intentionally acted to silence an individual *in order to* prevent the witness from testifying against the defendant on another criminal matter. Thus, the "waiver-by-misconduct" rationale present in cases where a defendant silences a witness to a crime is absent from this case.

**12.** *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (internal quotation marks omitted).

**13.** *Id.*

**14.** *See State v. McDonald,* 872 P.2d 627, 643 (Alaska App.1994).

**15.** *See Larson v. State,* 656 P.2d 571, 575 (Alaska App.1982) ("Alaska Rule of Evidence 403, when properly applied, does not violate a defendant's constitutional right to confront the witnesses against him and present evidence in his own behalf.").

**16.** *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**17.** *Love v. State,* 457 P.2d 622, 631–32 (Alaska 1969).

when hearsay is inadmissible under Rule 403.[18] Here, the court of appeals evaluated the error under this standard and concluded that "[i]n the context of this lengthy trial and the extensive evidence against [Ronald], we are convinced that the admission of this statement did not appreciably affect the jury's verdict." We agree.

 As the State argues, the State presented substantial circumstantial evidence at trial indicating that Ronald murdered his wife. Moreover, the State never seemed to focus on or emphasize the "lethal situation" statement after it was admitted.[19] While the trial court could have sanitized the potentially inflammatory comment or excluded it from evidence, we do not believe that Diane's reference to a potentially "lethal situation" appreciably affected the jury's verdict in this case. Thus, the error was harmless.

## IV. CONCLUSION

The court of appeals incorrectly held that the "lethal situation" statement did not fall within the state-of-mind exception to the hearsay rule. But the court of appeals properly analyzed the Confrontation Clause challenge and reviewed the issue under the appropriate "harmless error" standard. Therefore, we AFFIRM.

BRYNER, Justice, not participating.

T.P.D., Appellant and Cross–Appellee,

v.

---

18. *See Avery v. State,* 514 P.2d 637, 645–46 (Alaska 1973).

19. *Cf. Lemon v. State,* 514 P.2d 1151, 1157 (Alaska 1973) (holding that admission of nontestifying accomplice's hearsay was harmful where "it was a major part of the state's case placing Lemon at the scene").