Ronald F. WYATT, Appellant,

v.

Estate of Diane E. WYATT, Appellee.

No. S–9087.

Supreme Court of Alaska.

March 7, 2003.

Rehearing Denied June 10, 2003.

Ronald F. Wyatt, pro se.

Donna C. Willard, Law Offices of Donna C. Willard, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## *OPINION*

EASTAUGH, Justice.

### I. INTRODUCTION

Having appealed his first-degree murder conviction for the death of his wife, Ronald Wyatt obtained a stay of the wrongful death civil lawsuit his late wife's estate brought against him. In exchange, he agreed with her estate in open court that ownership of disputed real and personal property would vest in the estate if his criminal appeal was unsuccessful. Wyatt argues that the agreement did not encompass his separate property. We hold that it did, and therefore affirm the superior court's interpretation of the agreement and its refusal to let him use the property to hire defense counsel in the civil action. We also affirm as to all other issues he raises.

## II. FACTS AND PROCEEDINGS

Ronald Wyatt was charged in October 1992 with murdering his wife of almost eight years, Diane Wyatt.[1] A jury convicted him of first-degree murder in 1993 and the Alaska Court of Appeals affirmed his conviction in 1997. We affirmed in May 1999.[2]

Diane Wyatt's sister, Susan Vik, was appointed special administrator of Diane's estate in October 1992 to collect and manage the estate's assets. On behalf of the estate, Vik filed a civil wrongful death suit against Wyatt in October 1992. The estate sought and obtained a restraining order against Wyatt to ensure that he would not disturb assets that the estate could potentially claim. Wyatt stipulated that his bank accounts would be frozen pending the criminal case. He could use those accounts only for living expenses and defense counsel in the criminal prosecution.

In August 1994 the estate moved for partial summary judgment to establish Wyatt's liability for Diane's death. In September 1994 the estate again moved for partial summary judgment and argued that Wyatt had no constitutional right to counsel in the civil action. This motion responded to a letter Wyatt wrote the superior court requesting more time to retain substitute defense counsel in the civil case after his criminal lawyer withdrew from Wyatt's civil case in May 1994, and after the court-imposed deadline for pro bono services for the civil action had expired. The court granted the estate's summary judgment motion on the issue of Wyatt's right to counsel. Wyatt moved for reconsideration, arguing that proceeding with the civil trial would adversely affect his Fifth Amendment right against self-incrimination in his criminal appeal. In November 1994 the superior court granted the estate's other motion for summary judgment on the issue of Wyatt's liability for Diane's death, based on the preclusive effect of Wyatt's criminal conviction. In December 1994 Wyatt moved for reconsideration.

During a February 1995 hearing in the civil case, Wyatt, the estate, and the superior court discussed staying the wrongful death trial pending the criminal appeal. Wyatt, representing himself, asked the court to stay the civil proceedings until his criminal appeal was resolved. Counsel for the estate suggested transferring all of the property to the estate pending the appeal. If the appeal were successful, the property would be disgorged and its status could then be litigated. The parties and the court considered this proposal at some length. The court explained that if Wyatt's appeal were unsuccessful and his conviction was affirmed, the stay would be lifted and the estate "could then transfer that property to anybody, to use it, [or] do whatever they wanted to with it." Wyatt answered, "If the appeal is not successful." The court stated, "Exactly." It then confirmed that if the appeal was successful, the property would return to its pre-agreement legal status. The court asked Wyatt if "everything" the court had explained was "clear," and Wyatt answered, "yes." Asked by the court if he had "any questions," Wyatt answered, "no." Wyatt's other comments made it clear he understood at the hearing that he was entering into an agreement which would moot any dispute about ownership of the property if his appeal were unsuccessful. For example, he stated:

> Well, what the—what we talked about originally about the property being put in the—just put on hold, you might say, and then my appeal is successful, I'm back where I was. If it's not, I'm out of luck.

The court made it clear that if Wyatt agreed to these terms orally, "it becomes binding tonight," and that if Wyatt later refused to sign papers transferring property, the court would instruct the clerk to sign them.

The agreement was then reduced to writing, but Wyatt objected to several terms. The superior court determined that the stay order reflected the oral agreement and entered the stay order in May 1995. When Wyatt refused to sign the stay order, the superior court instructed the clerk to sign on Wyatt's behalf. Wyatt filed a motion in July

1. The facts relevant to Wyatt's petition for hearing in this court are discussed in *Wyatt v. State*, 981 P.2d 109, 110–12 (Alaska 1999).

2. *Id.* at 116.

1995 to stay the superior court's order. His motion was ultimately denied.

After the court of appeals affirmed Wyatt's criminal conviction in May 1997, the transfer of property began. The superior court in the civil lawsuit ordered in April 1998 that funds be transferred to the estate. Wyatt objected to the transfer and requested funds from the transferred property so he could hire counsel to defend himself in the civil case. The superior court rejected Wyatt's motion. Wyatt filed a motion for reconsideration in September 1998. He claimed again that some of the transferred property belonged to him. The superior court again rejected Wyatt's claims. The superior court stated that the settlement agreement governed the transfer of funds to the estate. It also stated that "[s]ince [the civil] case has been settled long ago, there is no pending complaint that Mr. Wyatt can assert cross-claims or counterclaims against."

Wyatt appeals.

## III. DISCUSSION

### A. Standard of Review

■ In determining the validity and scope of the agreement between Wyatt and the estate, "[t]he intent of the parties is to be determined by the surrounding facts and circumstances of each case, and is reviewed under the clearly erroneous standard."[3] We review the superior court's enforcement of the agreement for abuse of discretion.[4] We review Wyatt's constitutional issues de novo.[5] We review the superior court's award of attorney's fees and costs for abuse of discretion.[6]

### B. Wyatt's Oral Agreement with the Estate at the February 1995 Hearing Encompassed All the Disputed Property.

Wyatt makes two principal arguments regarding the oral agreement reached at the February 1995 hearing: first, that the oral agreement did not cover all of the property Wyatt owned individually or jointly with his late wife; and second, that the superior court erred in finding that the written agreement reflected the oral agreement. We conclude that the court did not err.[7]

#### 1. The February 1995 oral agreement covered all property individually or jointly owned by Ronald Wyatt.

■ Wyatt orally offered to give the estate ownership of, or legal title to, Wyatt's "various assets, personal, real, and cash" in exchange for a stay of the civil trial.

Accepting the offer, the estate agreed to delay prosecuting its civil claims against Wyatt until his criminal appeal concluded. It also agreed that if Wyatt's criminal appeal was successful, the estate would disgorge Wyatt's property, and the parties would litigate at that point.

■ We have held that "[t]he formation of a valid contract requires an offer encompassing all essential terms, unequivocal acceptance by the offeree, consideration, and an intent to be bound."[8] A settlement agreement satisfying these elements forms a binding contract between the settling parties.[9] The bilateral exchange of promises between Wyatt and the estate was sufficient consideration to form a contract.[10]

3. *Juliano v. Angelini*, 708 P.2d 1289, 1291 (Alaska 1985) (citing *Thrift Shop, Inc. v. Alaska Mut. Savs. Bank*, 398 P.2d 657, 658–59 (Alaska 1965)).

4. *Dickerson v. Williams*, 956 P.2d 458, 462 (Alaska 1998).

5. *VinZant v. Elam*, 977 P.2d 84, 86 (Alaska 1999).

6. *Gold Bondholders Protective Council v. Atchison, Topeka & Santa Fe Ry. Co.*, 658 P.2d 776, 779 (Alaska 1983).

7. The three categories of property at issue here are Wyatt's separate property (held by Wyatt before the marriage); the decedent's separate property; and the Wyatts' joint marital property.

8. *Davis v. Dykman*, 938 P.2d 1002, 1006 (Alaska 1997) (citations omitted).

9. *Singh v. State Farm Mut. Auto. Ins. Co.*, 860 P.2d 1193, 1199 (Alaska 1993).

10. *See Beluga Mining Co. v. State, Dep't of Natural Res.*, 973 P.2d 570, 578 (Alaska 1999).

■ We will hold an agreement unenforceable if its terms are not reasonably certain.[11] But the superior court carefully explained to Wyatt the relevant terms of the proposed agreement, and emphasized the importance of Wyatt's understanding. Any possible doubt about the agreement's scope was removed when the superior court explained that the agreement covered all of Wyatt's property:

> The agreement is that all this property[:] ... [the] real estate here, [the] personal property here, [the] negotiable instruments, and [the] cash. All that property would be transferred to the estate, in the name of the estate.

There is no reasonable doubt about what property the agreement covered. Moreover, the record makes it clear that Wyatt actually understood that the agreement covered even separate property he owned individually. Wyatt's recognition that the agreement covered his personal savings bonds illustrated his understanding of the agreement's scope. The superior court did not clearly err in determining that the agreement covered separate property Wyatt owned individually.

### 2. The superior court did not err in finding that the written agreement reflected the parties' oral agreement.

■ Wyatt argues that the superior court's May 1995 stay order did not conform to the parties' February 1995 oral agreement.[12] Wyatt's primary objection to the written stay order is that it did not contain a complete and accurate inventory of Wyatt's joint and separate ("personal") property, including "U.S. Bonds and over $200,000" in assets. Wyatt argues that the estate materially misrepresented the oral agreement when it drafted the May 1995 written stay order for approval by the superior court. The

estate responds by recounting Wyatt's acknowledgment in open court that the oral agreement covered Wyatt's interest in the couple's joint property and his separate property. The estate argues that Wyatt's 1995 objections to the terms of the stay order—including the estate's inventory of Wyatt's property—were irrelevant because all of the property was covered in the agreement. Given the scope of the oral agreement, see Part III.B.1, we agree with the estate.

Moreover, we do not have to consider Wyatt's claim that the estate prepared an incomplete inventory list; regardless of the accuracy of the list, all of Wyatt's property was to be transferred to the estate per the February 1995 agreement.[13]

Wyatt next argues that the February 1995 agreement contemplated that no transfer would take place until all appeals were completed, not just his appeal to the Alaska Court of Appeals. The estate counters that Wyatt did not object to the provision in the stay order explicitly referring only to Wyatt's appeal to the court of appeals. The order, for example, referred to the agreement to stay "until the decision of the Court of Appeals of Wyatt's appeal in docket [N]o. A–5291." It referred to the estate's agreement not to transfer property until ten days "following affirmance of Wyatt's murder conviction by the Alaska Court of Appeals in docket [N]o. A–5291." It also referred to the estate's obligation to secure the property for the period ending ten days "immediately following affirmance of Wyatt's [murder] conviction by the Alaska Court of Appeals in docket [N]o. A–5291." The estate also notes that the agreement contained a provision by which Wyatt agreed that the "Impound Period shall not be otherwise extended by subsequent appeal of Wyatt's conviction to a higher federal or state appellate court following

---

11. *Davis,* 938 P.2d at 1006.

12. Wyatt cites *Thrift Shop v. Alaska Mutual Savings Bank,* 398 P.2d 657 (Alaska 1965), in support of his argument that "it is essential that acceptance of the offer be unequivocal and in exact compliance with the requirements of [Wyatt's] offer." But this case is clearly distinguishable from *Thrift Shop,* in which we held that no oral contract existed; the parties' intent in *Thrift Shop* did not become manifest until the terms were later reduced to writing. In compar-

ison, as noted in Part III.B.1, the record demonstrates that Wyatt understood that there was an oral agreement and understood the scope of the agreed-upon property transfer.

13. Wyatt's brief repeats and rephrases in different ways his argument about the estate's inventory of the property. We reject all of these attempts for the same reason: Wyatt explicitly agreed to the transfer of *all* property in which he potentially had a claim.

the decision of the Alaska Court of Appeals on the matter now pending before that court described as docket No. A–5291." It referred also to "the Alaska Court of Appeals resolution of Wyatt's appeal in A–5291."

As a result, the estate asserts that there is no indication in the record that the superior court suggested to Wyatt that "appeal" referred to any proceeding other than his then-pending direct appeal in the court of appeals.[14] Wyatt's own statements during the February 1995 hearing refer only to one appeal. His current interpretation of "appeal" is at odds with the plain language of the oral agreement and the written stay order.

Regardless, we do not have to decide whether the court erred in interpreting "appeal" to mean only Wyatt's direct appeal because we conclude that Wyatt was not harmed by this interpretation. Per the February 1995 agreement, the estate held all of Wyatt's assets in its name in exchange for entry of a stay of the civil proceedings. Even if funds were transferred to the estate before the final resolution of his claims on appeal, Wyatt did not have access to any of his assets after the court entered the stay order and therefore suffered no harm.[15] The superior court also did not err when it stated in its September 1998 order that "[t]his agreement became a final court order by its own terms, 10 days after the Court of Appeals upheld Mr. Wyatt's conviction."

### C. Wyatt's Remaining Arguments Do Not Require Reversal.

#### 1. Wyatt was not wrongfully denied counsel in the civil proceedings.

■ Wyatt argues that he was wrongfully denied access to funds, including the sav-

ings bonds he alleged to be separate property, and that this denial violated his due process rights under both the United States and Alaska Constitutions. But Wyatt voluntarily entered into the February 1995 agreement with the estate to transfer all property, joint or separate, to which he had any claim. This disposed of the issue.

Wyatt further argues that if the superior court would not grant Wyatt access to his funds, it should have appointed counsel to represent Wyatt in the civil suit. But the superior court stated in a November 1994 order that Wyatt "[had] not moved this court for an appointment of counsel. [And][i]n any event, the court is without authority to appoint Mr. Wyatt counsel at public expense." The superior court correctly relied on precedent limiting appointment of counsel at public expense.[16] Wyatt's situation was not one allowing such an appointment, and in any event, Wyatt did not pursue the issue beyond the February 1995 agreement.

#### 2. It was not error to deny Wyatt a stay in the civil proceedings until he exhausted all appeals of his criminal conviction.

■ Wyatt argues that the superior court's decision denying Wyatt's motion for a stay of the civil proceedings violated Wyatt's "Fifth Amendment right against self-incrimination." Wyatt states that the superior court's refusal to grant a stay prompted Wyatt to enter "into an unfavorable agreement [with] the Estate to stay [the] proceedings." The estate responds that because the case settled, the superior court was not required to decide the issue.

14. The superior court, in discussing Wyatt's proposal stated: "Once the appeal comes down, if it's affirmed, the stay would be lifted.... On the date that the appeal comes down, plus 10 days, the estate could then transfer that property to anybody, to use it, do whatever they wanted to with it."

15. Wyatt invokes AS 13.12.803(f) in arguing that "[a] stay in the civil proceedings ... should have been [an] absolute right." But AS 13.12.803 addresses the effect of homicide on intestate succession, wills, trusts, and other property and interest transfers. It does not affect the estate's

wrongful death claim in the civil proceedings, and it has no bearing whatsoever on Wyatt's voluntary agreement with the estate to stay those proceedings.

16. *Langfeldt–Haaland v. Saupe Enters., Inc.*, 768 P.2d 1144, 1146 & n. 23 (Alaska 1989) (stating that "an indigent person has no right to appointed counsel in most civil cases, although certain exceptions exist in the areas of termination of parental rights, child custody, paternity suits, and civil contempt proceedings") (citations omitted).

The record contains no decision by the superior court denying Wyatt a stay and Wyatt points to none in his brief. The superior court requested and received extensive briefing from both parties on Wyatt's previous stay motion, but it did not deny Wyatt a stay before it conducted the February 1995 hearing. After Wyatt made his stay proposal at that hearing, the parties agreed to terms staying the civil trial and the court stayed the proceedings per their agreement.

There is consequently no merit to Wyatt's claim that the superior court's "denial of his motion for a stay" violated his constitutional rights.

### 3. It was not error to grant partial summary judgment to the estate on the basis of Wyatt's criminal conviction.

■ Wyatt argues that the superior court erred in granting the estate partial summary judgment in the civil lawsuit based on his conviction in the criminal case. Wyatt argues that his criminal conviction should not have been given preclusive effect in the civil case because it was still being appealed, and that there was consequently no final judgment to be given preclusive effect. The estate responds that the judgment in the criminal case was final upon its entry and that the superior court properly granted summary judgment.

■ We have repeatedly held that the pendency of an appeal is irrelevant for the purposes of res judicata and collateral estoppel.[17] We have acknowledged that "[t]he difficulty with the rule that a judgment retains its preclusive effects even if it is appealed is that a second judgment based on the preclusive effects of the first one should not stand if that judgment is reversed."[18] But that difficulty has no bearing on Wyatt's case. His conviction was upheld when he appealed to the court of appeals and when he petitioned for hearing to this court.[19] Nor will "resolution of the appeal in the first action ... preclude the second action *entirely*."[20] Reversal of the conviction, and indeed, acquittal of the criminal charge, would not have prevented the estate's wrongful death civil suit from succeeding.[21]

We acknowledge the possibility that the success of a given appeal may be so highly probable that giving preclusive effect to the judgment may be ill-advised.[22] But this case provides no opportunity to consider how that issue should be resolved. And it would seem that an Alaska Civil Rule 60(b)(5) motion to vacate any judgment resting on the preclusive effect of the earlier judgment following its reversal would provide adequate relief in that situation.[23]

Wyatt argues that the superior court erred in granting summary judgment because he claims issues remain to be presented to appellate courts as part of Wyatt's post-conviction motion. Wyatt does not offer any explanation why these issues could not have been raised in his earlier appeal. Moreover, to give effect to Wyatt's argument we would have to ignore the results in Wyatt's unsuccessful criminal appeal and petition for hearing. Wyatt does not adequately explain why appeals from any collateral proceedings are

**17.** *Lyman v. State*, 824 P.2d 703, 705 (Alaska 1992) (applying rule to collateral estoppel); *Holmberg v. State, Div. of Risk Mgmt.*, 796 P.2d 823, 829 (Alaska 1990) (stating that "[a] final judgment retains all of its res judicata effects pending resolution of an appeal of the judgment") (citation omitted); *Rapoport v. Tesoro Alaska Petroleum Co.*, 794 P.2d 949, 951–52 (Alaska 1990) (applying rule to collateral estoppel).

**18.** *Holmberg*, 796 P.2d at 829 (citations omitted).

**19.** *Wyatt*, 981 P.2d at 112, 116.

**20.** *Holmberg*, 796 P.2d at 829 (emphasis added).

**21.** One reason is that the burden of proof is more stringent in a criminal action than in a civil

action. *See, e.g., United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984) (ruling that double jeopardy does not bar civil forfeiture proceeding following acquittal on related criminal charges).

**22.** 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4433 (2d ed.2002) (stating that "[i]n some cases, litigants and the courts have collaborated so ineptly that the second judgment has become conclusive even though it rested solely on a judgment that was later reversed").

**23.** *Lyman*, 824 P.2d at 705 & n. 7.

relevant. The preclusive effects of Wyatt's criminal conviction are not defeated by the pendency of any post-conviction relief proceeding.[24]

The superior court did not err in granting partial summary judgment to the estate.

### 4. The superior court did not err in denying Wyatt's discovery request.

Wyatt argues that it was error to deny his discovery request for information about the estate's inventory of property. He asserts that this denial of discovery denied his due process rights. Wyatt has inadequately briefed the issue, even under the more relaxed standard we apply to pro se litigants.[25] We will not consider the issue on its merits. But as we noted in Part III.B.2, the inventory list is not relevant to the outcome of this case.

### 5. The superior court did not err in awarding costs to the estate.

Wyatt argues that the superior court erred in awarding attorney's fees and costs to the estate because the estate allegedly comingled all costs and fees from the civil and probate proceedings.

We agree with the estate's assertion that the attorney's fees issue is not before us because the superior court did not award attorney's fees to the estate.

The estate responds to Wyatt's costs argument by contending that the superior court separated the civil and probate matters in awarding costs to the estate. The court stated that it was adjusting the court award "to reflect only those costs incurred after the parties reached their agreement." The court's award is not facially defective, and Wyatt's conclusory argument does not identify any particular costs erroneously awarded. It appears to us that the court carefully reviewed the estate's expenses before awarding it $2,318.25 in costs. Wyatt summarily asserts that the estate "co-mingled" the costs of the probate and civil proceedings, but fails

to demonstrate that the court abused its discretion in awarding costs.

## IV. CONCLUSION

We AFFIRM the superior court's decisions in all respects.

---

24. *See also* Wright & Miller, *supra* note 22 (stating that "it has been ruled that the preclusion effects of a criminal conviction are not defeated by the pendency of a post-conviction proceeding that attacks the conviction") (citation omitted).

25. *Martinson v. ARCO Alaska, Inc.,* 989 P.2d 733, 737 (Alaska 1999).