NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

RONALD F. WYATT,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-10791
Trial Court No. 1JU-05-620 CI

O P I N I O N

No. 2538 — February 17, 2017

Appeal from the Superior Court, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Ronald F. Wyatt, *in propria persona*, Wasilla, Alaska, for the Appellant. Michael Sean McLaughlin, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

In 1994, Ronald F. Wyatt was convicted of first-degree murder and evidence tampering in connection with the homicide of his wife. This Court affirmed his convictions on direct appeal. [1]

In 2000, Wyatt filed a *pro se* application for post-conviction relief in which he claimed that his trial attorney had actively impeded his wish to testify on his own behalf at his trial. However, after an attorney was appointed to represent Wyatt in this post-conviction relief litigation, the attorney abandoned Wyatt's claim of active obstruction and instead pursued a different claim: that Wyatt's trial judge had failed to obtain Wyatt's express waiver of his right to testify.

The superior court dismissed that application for failure to state a prima facie case for relief, and we upheld the superior court's decision. [2]

Wyatt then filed a second application for post-conviction relief, claiming that his first post-conviction relief attorney had incompetently abandoned his initial claim for post-conviction relief and had, instead, substituted a claim that had no chance of success. In this second application, Wyatt renewed his claim that his trial attorney had actively obstructed or usurped his decision to testify on his own behalf at trial.

The superior court dismissed this second application for post-conviction relief on the pleadings, again concluding that Wyatt failed to state a prima facie case for relief.

For the reasons explained here, we find that the superior court erred in dismissing Wyatt's second application on the pleadings — that this second application did, in fact, state a prima facie claim for relief. We therefore reverse the superior court's

---

[1] *See Wyatt v. State*, unpublished, 1997 WL 250441 (Alaska App. 1997).

[2] *See Wyatt v. State*, unpublished, 2004 WL 2966177 (Alaska App. 2004).

decision and remand Wyatt's case to the superior court for further proceedings consistent with this opinion.

*Underlying proceedings*

The facts of Wyatt's underlying criminal case and his first petition for post-conviction relief are more fully described in this Court's decisions in *Wyatt v. State* (I), unpublished, 1997 WL 250441 (Alaska App. 1997) (resolving Wyatt's direct appeal), and *Wyatt v. State* (II), unpublished, 2004 WL 2966177 (Alaska App. 2004) (resolving Wyatt's first petition for post-conviction relief). The following procedural history is taken from those two prior decisions, as well as from the pleadings filed in Wyatt's current (second) petition for post-conviction relief.

Wyatt was indicted in 1992 for murdering his wife and for tampering with evidence by hiding her body. Toward the end of Wyatt's trial, his attorney announced that he intended to rest the defense case without putting Wyatt on the stand. The trial judge accordingly advised Wyatt of his right to testify as required by *LaVigne v. State*.[3] In response to this advisement, Wyatt acknowledged that he understood that he had the absolute right to testify, and that the decision was his to make, not his attorney's. At that point, Wyatt said nothing more, and the judge did not press Wyatt to formally declare that he did not wish to testify.[4]

The prosecutor was not prepared to present his rebuttal case that day, so he asked the judge to adjourn the trial until the next day. During this discussion, Wyatt said

---

[3]  812 P.2d 217 (Alaska 1991).

[4]  *Wyatt II*, 2004 WL 2966177 at *7.

nothing to indicate that he wanted to testify before the prosecutor presented his rebuttal case. [5]

Ultimately, the jury convicted Wyatt of both murder and evidence tampering. We affirmed Wyatt's convictions and sentence in his direct appeal. [6]

Wyatt then filed a *pro se* application for post-conviction relief, raising a number of claims. Among these claims was the assertion that Wyatt's trial attorney had actively obstructed or usurped Wyatt's decision to testify on his own behalf — allegedly by telling Wyatt that he would not permit him to take the stand.

The superior court appointed an attorney to represent Wyatt, and that attorney filed an amended application for post-conviction relief. In this amended application, the attorney abandoned Wyatt's claim that his trial attorney had obstructed him from testifying. Instead, the post-conviction relief attorney substituted a different claim: that the trial judge's *LaVigne* inquiry had been insufficient as a matter of law.

Wyatt's post-conviction relief attorney argued that even though the trial judge adequately advised Wyatt of his right to testify, the judge then committed error by failing to obtain Wyatt's express waiver of the right to testify. The attorney further argued that the judge's omission required automatic reversal of Wyatt's conviction.

The superior court dismissed Wyatt's post-conviction relief application, finding that it failed to state a prima facie case. We affirmed that decision on appeal, holding that the trial judge had complied with *LaVigne* even though Wyatt had not expressly waived his right to testify. [7]

---

[5]    *Id*. at *7-8.

[6]    *Wyatt I, affirmed on petition for hearing in Wyatt v. State*, 981 P.2d 109 (Alaska 1999).

[7]    *Wyatt II*, 2004 WL 2966177.

Wyatt then filed a second application for post-conviction relief, alleging that the attorney who represented him in the first post-conviction relief litigation was incompetent because he abandoned Wyatt's original claim for relief — the claim that Wyatt's trial attorney had actively obstructed him from testifying.[8]  In support of this claim, Wyatt submitted an affidavit in which he stated:

> At the time of my trial, I did not understand that I had the absolute right to testify.  I had asked my attorney to permit me to testify, and he had indicated that I would not be permitted to testify, and had taken no steps to prepare me to testify, even though I had pointed out several areas in which I could provide information to rebut the prosecution's evidence.

Wyatt's affidavit further alleged that when the trial judge advised him that he could testify despite his attorney's contrary wishes, Wyatt then waited for the judge to inquire whether he wished to testify — but the judge instead turned to other matters:

> When the judge asked whether I understood that I had the right to testify, I answered the question accurately.  The judge did not ask me whether I chose to waive that right.  If the judge had asked me, I would have explained that I did wish to testify.

Wyatt's son, Mark Wyatt, served as his father's third-party custodian during the trial proceedings, and he attended meetings between his father and the defense attorney.  In corroboration of his father's affidavit, Mark Wyatt also alleged that Wyatt's trial attorney obstructed Wyatt's right to testify:

---

[8]  *See Grinols v. State*, 10 P.3d 600, 618 (Alaska App. 2000), *affirmed in part*, 74 P.3d 889 (Alaska 2003) (holding that a petitioner may litigate a second application if the first post-conviction relief attorney provided incompetent representation in the first application).

I was present on several occasions when my father and [his trial attorney] had discussions regarding my father's testimony at trial. My father argued strongly that he wanted to testify in his own behalf, but his [lawyer] was insistent that he would not let him testify.

Notwithstanding these allegations, the superior court dismissed Wyatt's second application for post-conviction relief. The court concluded that Wyatt had again failed to plead a prima facie case. Wyatt now appeals the dismissal of his second application.

*Why we conclude that Wyatt presented a prima facie case that his earlier post-conviction relief attorney acted incompetently in selecting the issues to pursue*

To avoid dismissal of his second application for post-conviction relief, Wyatt had to offer a prima facie case (1) that his first post-conviction relief attorney acted incompetently when he abandoned Wyatt's initial claim (*i.e.*, the claim that Wyatt's trial attorney actively obstructed him from testifying at trial), and (2) that if this claim of active obstruction had been pursued, Wyatt would have prevailed on this claim, and (3) that if Wyatt prevailed on this claim, he would be entitled to modification or reversal of his original criminal judgement.

Because Wyatt's burden was only to offer a "prima facie case" for post-conviction relief, Wyatt did not have to prove (at this stage) that he was entitled to relief. Rather, Wyatt was required to present the superior court with well-pleaded *assertions of fact* which, *if ultimately proved*, would be sufficient to establish his entitlement to relief.

Turning to the first element of Wyatt's claim for post-conviction relief, Wyatt had to offer a prima facie case that the litigation strategy of his first post-conviction relief attorney — *i.e.*, the attorney's abandonment of Wyatt's "active

obstruction" claim and his substitution of the "lack of express waiver" claim — was so incompetent as to fall below the minimum level of competency expected of criminal law practitioners.

In *Coffman v. State*,[9] we addressed the related situation where a defendant sought post-conviction relief based on the contention that their appellate attorney acted incompetently when choosing the claims to pursue on appeal:

> [The petitioner] raises a specialized claim of incompetence: she asserts that her appellate attorney incompetently selected the issues to be pursued on appeal. Courts from around the country are in basic agreement concerning the prima facie case that a defendant must present to support a claim of attorney incompetence in this situation. To establish a prima facie case that an appellate counsel's choice of issues was incompetent, the defendant must establish (1) that the proposed additional issue is significantly stronger than the issues that were raised in the appeal; (2) that the appellate attorney had no valid tactical reason for failing to include this particular issue; and (3) that, if the proposed issue had been included, there is a reasonable possibility that the outcome of the appeal would have been different. [Footnote omitted]
>
> Although proof of these three elements will establish a prima facie case, the ultimate question is not whether the appellate attorney could have done better. Rather, the ultimate question is whether the attorney's choice of issues

---

[9] 172 P.3d 804 (Alaska App. 2007).

was so ill-considered that it fails to demonstrate the minimal competence required of criminal law practitioners.

*Coffman*, 172 P.3d at 813.

Applying these criteria to the analogous situation presented in Wyatt's case, we conclude that Wyatt's second application for post-conviction relief set forth a prima facie case that his first post-conviction relief attorney's choice of issues was incompetent. Wyatt's initial "active obstruction" claim was at least litigable, but his attorney's "lack of express waiver" claim was doomed from the outset.

In his "lack of express waiver" claim, Wyatt's first post-conviction relief attorney conceded that Wyatt's trial judge properly apprised Wyatt of his right to testify — but he argued that the trial judge nevertheless committed error by failing "to elicit from Mr. Wyatt [an express] waiver of his right to testify". The attorney then argued that, because the judge failed to elicit this express waiver, Wyatt was entitled to an automatic reversal of his convictions, without any affirmative showing that he was prejudiced by the judge's supposed error.

Both of these assertions — that the trial judge was required to obtain Wyatt's express waiver of his right to testify, and that this supposed departure from *LaVigne* automatically required a reversal of Wyatt's convictions — were obviously meritless under this Court's then-existing case law.

As we explained in *Wyatt II*, 2004 WL 2966177 at *4-5, this Court had already rejected the notion that *LaVigne* required trial judges to obtain a defendant's express waiver of their right to testify, [10] and we had already rejected the notion that a

_____

[10] See *Knix v. State*, 922 P.2d 913, 918-19 (Alaska App. 1996), where we noted that "[t]he inescapable corollary of [a defendant's] fundamental right to testify is the equally fundamental right to silence" — so that even when a defendant refuses to explicitly waive

(continued...)

judge's failure to conduct a proper *LaVigne* inquiry required automatic reversal of a defendant's conviction, without a case-specific showing of prejudice. [11]

When the superior court dismissed Wyatt's current application for post-conviction relief on the pleadings, the court hypothesized that, despite the fact that Wyatt's first post-conviction relief attorney could not recall his reason for pursuing the meritless "lack of express waiver" claim, the attorney might have had a valid tactical reason for choosing to pursue this meritless claim rather than Wyatt's initial "active obstruction" claim. The court suggested that the meritless "lack of express waiver" claim was "cleaner" than Wyatt's initial "active obstruction" claim — "cleaner" in the sense that the lack-of-waiver claim "did not require an evidentiary hearing". The superior court also suggested that if an evidentiary hearing had been held, the testimony elicited from Wyatt and his trial attorney "might weaken" Wyatt's claim for post-conviction relief.

There are three problems with the superior court's approach to this issue.

First, Wyatt offered an affirmative and plausible reason to believe that his former attorney's choice of issues was incompetent. As we have just explained, the issue

---

[10] (...continued) their right to testify, a trial judge "[can] hardly order [a defendant] to take the stand and testify in their own defense."

[11] *See Weist v. Anchorage*, 929 P.2d 668, 669 (Alaska App. 1996), and *Pitka v. State*, 995 P.2d 677, 680 (Alaska App. 2000) (both holding that even when a trial judge completely fails to conduct any *LaVigne* advisement, the defendant must still establish prejudice by affirmatively showing (1) that they would have taken the stand if they had known that it was their right, and (2) that they had relevant testimony to offer). *See also Hurn v. State*, 872 P.2d 189, 198 (Alaska App. 1994) ("A failure to comply with the *LaVigne* rule is harmful, not because that failure by itself proves that a defendant's constitutional right was abridged, but because the failure makes it harder to determine the facts underlying the defendant's claim of constitutional violation.").

that his attorney chose to pursue (*i.e.*, the "lack of express waiver" argument) was clearly meritless. In contrast, Wyatt's claim that his trial attorney actively obstructed Wyatt's desire to testify had ostensible evidentiary support and was litigable.

Second, because it was the court (and not Wyatt's attorney) who suggested this potential tactical reason for the attorney's actions, and because the court did not air this potential reason until the court issued its decision dismissing Wyatt's application for post-conviction relief, Wyatt never had an opportunity to respond to the court's suggestion.

Third, even if Wyatt's post-conviction relief attorney *had* based his choice of issues on the tactic suggested by the superior court (*i.e.*, the tactic of trying to keep Wyatt from taking the stand), the attorney's tactic was incompetent — because, to successfully pursue the "lack of express waiver" claim that his attorney raised, Wyatt would have to take the stand.

Turning to the first problem with the superior court's analysis, we begin by noting that even though a defendant who seeks post-conviction relief bears the burden of proving that their attorney was incompetent, the defendant does not have to prove their attorney's incompetence beyond all doubt. Rather, the defendant must prove this proposition by clear and convincing evidence. [12]

We have previously explained that when the record is neutral on the issue of the attorney's incompetence — *i.e.*, when the attorney's complained-of action (or inaction) might, as likely as not, be attributed to a reasonable tactical choice — then the defendant has failed to meet their burden of proof. [13]

---

[12] AS 12.72.040.

[13] *See Allen v. State*, 153 P.3d 1019, 1027 (Alaska App. 2007); *Parker v. State*, 779 P.2d 1245, 1248 (Alaska App. 1989); *State v. Jones*, 759 P.2d 558, 574 n. 8 (Alaska App. 1988).

But when, as here, the record affirmatively indicates that the attorney's action was incompetent, the fact that the superior court can hypothesize a potential tactical reason for the attorney's action does not authorize the superior court to dismiss a defendant's post-conviction relief application on the pleadings — *i.e.*, to dismiss the case without allowing discovery and, potentially, holding an evidentiary hearing.

At this stage of the proceedings, Wyatt had no obligation to present conclusive proof of attorney incompetence. Because Wyatt asserted facts that affirmatively raised a reasonable inference of attorney incompetence, the mere possibility that Wyatt's attorney may have acted for sound tactical reasons was not a sufficient basis for dismissing Wyatt's post-conviction relief petition on the pleadings.

The final problem with the superior court's analysis of Wyatt's case is that, even if Wyatt's post-conviction relief attorney based his choice of issues on the tactic of trying to keep Wyatt from taking the stand (as the superior court suggested), this tactic would be incompetent. The tactic would be incompetent because Wyatt would, in fact, have to take the stand if his attorney was to successfully pursue the "lack of express waiver" claim.

This Court has repeatedly held that a faulty *LaVigne* advisement does not lead to automatic reversal of a defendant's conviction. Even when a trial judge gives an inadequate *LaVigne* advisement (or completely fails to give one), a defendant must still establish prejudice — by showing (1) that they would have testified if they had known that it was their right, and (2) that they had relevant testimony to offer. This rule was already well established when Wyatt's first application for post-conviction relief was litigated. [14]

---

[14] *See*, *e.g.*, *Weist v. Anchorage*, 929 P.2d at 669.

Thus, even if the trial judge's failure to obtain Wyatt's express waiver of the right to testify *had been* error under *LaVigne*, Wyatt would still have had to testify in the post-conviction relief proceedings to establish that he was prejudiced by the *LaVigne* error. And after Wyatt testified, one side or the other would almost inevitably have called Wyatt's trial attorney to testify about these matters.

In other words, Wyatt's first post-conviction relief attorney would have acted incompetently if he made his choice of issues based on the purported "fact" that a faulty *LaVigne* advisement would entitle Wyatt to automatic reversal of his convictions, without the need for Wyatt to take the stand at an evidentiary hearing.

In summation: Wyatt's current application for post-conviction relief contains well-pleaded assertions of fact which, if ultimately proved, would establish (1) that Wyatt's first post-conviction relief attorney abandoned a litigable claim (the claim that Wyatt's trial attorney obstructed Wyatt from exercising his right to testify) in favor of a "lack of express waiver" claim that was clearly meritless under existing law, and (2) that the attorney's choice of issues was incompetent — *i.e.*, below the minimal level of competence that we require of criminal law practitioners.

Because Wyatt offered affirmative reasons to believe that his attorney's choice of issues was incompetent, Wyatt was entitled to litigate his case even though there might be a possibility that his attorney acted for tactical reasons. And even assuming that Wyatt's post-conviction relief attorney *had* acted for tactical reasons, Wyatt was entitled to challenge the competency of his attorney's tactic.

We therefore conclude that Wyatt's current application for post-conviction relief presents a prima facie case that Wyatt received ineffective assistance from the attorney who represented him in his first application for post-conviction relief. The superior court should not have dismissed this claim, and Wyatt is entitled to proceed to discovery.

*Wyatt's additional issues*

Wyatt raises additional issues in his brief to this Court: issues concerning the jury instructions at his trial, the trial court's denial of a suppression motion, and allegations of prosecutorial misconduct. Claims based on the admission of evidence at trial cannot be raised in a post-conviction relief action. [15] Moreover, all of these claims are barred because they either were raised or could have been raised in Wyatt's direct appeal of his convictions. [16] We therefore affirm the superior court's dismissal of these claims.

*Conclusion*

We REVERSE the superior court's dismissal of Wyatt's claim that he received ineffective assistance of counsel from the attorney who represented him in his first post-conviction relief litigation. On that claim, this case is remanded to the superior court for further proceedings. However, we AFFIRM the superior court's dismissal of Wyatt's other claims.

---

[15] AS 12.72.020(a)(1).

[16] AS 12.72.020(a)(2).